**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA and** §<br>**STATE OF TEXAS,** §<br> §<br> **Plaintiffs,** §<br> §<br> **v.** §<br> §<br>**E. I. DU PONT DE NEMOURS AND** §<br>**COMPANY,** §<br> §<br> **Defendant.** §<br> § | **Civil Action No. 4:20-cv-02423** |

**MEMORANDUM IN SUPPORT OF UNOPPOSED JOINT MOTION**
**OF UNITED STATES OF AMERICA AND STATE OF TEXAS**
**TO ENTER PROPOSED CONSENT DECREE**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................ 3

III. STATUTORY SCHEME AND COMPLAINT ALLEGATIONS…............................ 4

IV. SUMMARY OF THE DECREE ............................................................................ 7

V. STANDARD FOR ENTRY ................................................................................... 8

VI. ARGUMENT ..................................................................................................... 10

    A.  Fairness ......................................................................................................... 10

    B.  Reasonableness and Adequacy ..................................................................... 12

    C.  Fidelity to the Statute .................................................................................... 18

i

VII.  RESPONSE TO PUBLIC COMMENTS…………………………………………..19

VIII. CONCLUSION........................................................................................................ 21

# TABLE OF AUTHORITIES

Cases

*Arizona v. Nucor Corp.*, 825 F.Supp. 1452, 1456 (D.Ariz.1992), aff'd sub nom ine, Arizona v. Components, Inc., 66 F.3d 213 (9th Cir.1995)............................................................................ 13 -

*Aro Corp. v. Allied Witan Co.*,
   531 F.2d 1368 (6th Cir. 1976) .................................................................................... 9 -

*Bragg v. Robertson*,
   54 F. Supp. 2d 653 (1999) ........................................................................................ 11 -

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) .......................................................................... 8 ,  9 ,  12, 18

*Environmental Conservation Org. v. City of Dallas*,
   529 F.3d 519 (5th Cir. 2008) .................................................................................- 10 -

*Environment Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 66 F. Supp. 3d 875 (S.D. Tex. 2014) ................................................................................................................................- 10 -

*In the Matter of an Enforcement Action Concerning E.I. du Pont de Nemours and Company*,
   No. 2015-0879-AIR-E (Tex. Comm'n on Envtl. Quality, Nov. 10, 2015).....................3, 16

*In re ASARCO LLC*,
   No. 05-21207, 2009 WL 8176641 ...................................................................- 11 , 12

*Milstein v. Werner*,
57 F.R.D. 515, 524-25 (S.D.N.Y.1972)................................................................................13

*Pennington v. Singleton*,
   606 S.W.2d 682 (Tex. 1980)....................................................................................-17

*Ruiz v. McKaskle*,
   724 F.2d 1149 (5th Cir. 1984) ...................................................... - 8 -, - 9 -, - 13 -

*State v. Laredo Ice Co*.,
   73 S.W. 951 (Tex. 1903)......................................................................................- 17 -

*State v. Morello*,
   547 S.W.3d 881 (Tex. 2018) *reh'g denied* (June 22, 2018), *cert. denied*,

   139 S.Ct. 575 (2018)............................................................................................. 17

*United States v. Akzo Coatings of America, Inc.*,
   949 F.2d 1409 (6th Cir. 1991) ............................................................................ 10 -

*United States v. ATP Oil & Gas Corp.*,
  No. 13-262, 2015 WL 13648078 (E.D. La. Jan. 28, 2015) ...............................v 8 -, - 11 -, - 12 -

*United States v. BP Amoco Oil PLC*,
  277 F.3d 1012 (8th Cir. 2002) ................................................................. vi

*United States v. Browning-Ferris Indus. Chem. Servs., Inc.*,
  704 F. Supp. 1355 ................................................................................ 8

*United States v. Cannons Eng'g Corp.*,
  899 F.2d 79 (1st Cir. 1990) ............................................................... passim

*United States v. City of Miami*,
  614 F.2d 1322 (5th Cir. 1980) .............................................................. 9

*United States v. City of Miami*,
  664 F.2d 435 (5th Cir. 1981) ............................................................. 8 ,9

*United States v. Comunidades Unidas Contra La Contamination*,
  204 F.3d 275 (1st Cir. 2000) ............................................................... 11

*United States v. ConocoPhillips Co.*, No. 2:10-cv-1556,
  2011 WL 1113703 (W.D. La. March 24, 2011) ........................................ 8 -, 12

*United States v. E. I. du Pont de Nemours and Company*,
  No. 4:18-cv-02545 .................................................................................3, 16

*United States v. Lexington-Fayette Urban Cnty. Government*,
  591 F.3d 484 (6th Cir. 2010) ............................................................... 11

*United States v. Union Elec. Co.*,
  934 F. Supp. 324 (E.D. Mo. 1996) ........................................................ 13

*United States v. Wallace*,
  893 F. Supp. 627 (N.D. Tex. 1995) ............................................... 9, 10 , 11

*Williams v. City of New Orleans*,
  729 F.2d 1554 (5th Cir. 1984) ............................................................. 10

Statutes

33 U.S.C. § 1251 *et seq.* ..................................................................... 1

33 U.S.C. § 1321(b)(8) ........................................................................ 14

33 U.S.C. § 1321(j) ............................................................................. 6

42 U.S.C. § 6901 ........................................................................... passim

42 U.S.C. § 6926(b)..................................................................................................4

42 U.S.C. § 6928(a) ................................................................................................ 4

42 U.S.C. § 6928(a)(3) ......................................................................................... 14

42 U.S.C. § 6928(g) .............................................................................................. 14

42 U.S.C. § 7401 *et seq.*.................................................................................. passim

42 U.S.C. § 7412.......................................................................................................5

42 U.S.C. § 7412(d) ................................................................................................ 5

42 U.S.C. § 7412(r)(7) .......................................................................................... 16

42 U.S.C. § 7413(e)(1) .......................................................................................... 14

42 U.S.C. § 9601 .................................................................................................... 11

Tex. Water Code ch. 7 ............................................................................................. 6

Tex. Water Code § 7.102 ....................................................................................... 17

Tex. Water Code § 7.108 ......................................................................................... 7

Tex. Water Code § 7.110 ......................................................................................... 2

Regulations

28 C.F.R. § 50.7 ................................................................................................ 2, 21

30 Tex. Admin. Code ch. 335 .................................................................................. 4

30 Tex. Admin. Code ch. 335.9(a)(2) .......................................................................6

30 Tex. Admin. Code § 113.700 .............................................................................. 6

30 Tex. Admin. Code § 113.730 .............................................................................. 6

30 Tex. Admin. Code § 335.1(154) .......................................................................... 4

30 Tex. Admin. Code § 335.6(c) ............................................................................. 5

40 C.F.R. Part 63.................................................................................................... 6

40 C.F.R. Part 68................................................................................................... 16

40 C.F.R. Part 112.......................................................................................................... 6

40 C.F.R. § 112.7 ........................................................................................................... 7

40 C.F.R. §112.8……………………..…………………………………………………….. 7

40 C.F.R. § 260.10 …………………..…………………………………………………....4

45 Tex. Reg. 5223 (July 24, 2020)……………………………………………………..…4

Tex. Health & Safety Code ch. 382  ............................................................................ 6

85 Fed. Reg. 42919-02 (July 15, 2020) ........................................................................ 2

# I.  INTRODUCTION

The United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), and the State of Texas ("State"), acting through the Attorney General of Texas, on behalf of the Texas Commission on Environmental Quality ("TCEQ") (collectively "Plaintiffs"), respectfully move the Court to approve, sign and enter the Consent Decree attached to the Motion, a copy of which was previously lodged with this Court on July 9, 2020. (ECF No. 3-1). The Consent Decree ("Decree") resolves all claims for civil penalties and injunctive relief alleged in the Complaint filed by the United States and the State against Defendant E.I. du Pont de Nemours and Company ("DuPont" or "Defendant") for multiple violations of federal and state environmental law during its operations of an agrichemicals manufacturing plant at 12501 Strang Road, La Porte, Harris County, Texas (the "Facility"). Specifically, the Complaint alleges violations of: (1) the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq*. ("RCRA"), and the authorized solid waste program under the Texas Solid Waste Disposal Act, Tex. Health & Safety Code ch. 361 ("TSWDA"); (2) the Clean Air Act, 42 U.S.C. § 7401 *et seq*. ("CAA"), and the Texas Clean Air Act (Tex. Health & Safety Code ch. 382); and (3) the Clean Water Act, 33 U.S.C. § 1251, *et seq*. ("CWA"), Chapter 26 of the Texas Water Code, and their implementing regulations.

As discussed more fully below, Plaintiffs believe that the violations alleged in the Complaint are substantial and well-supported. However, DuPont has raised factual and legal defenses to the allegations. The parties recognized the benefits of avoiding protracted litigation of the governments' claims and DuPont's defenses. In particular, the parties recognize that through this settlement, DuPont's resources are conserved to address compliance and remediation, and injunctive relief will begin to correct the violations more quickly than if the governments were to litigate to judgment. Settlement also conserves the limited resources

available to the state and federal governments while vindicating federal and state law requirements for the Facility.

Notice of the proposed Consent Decree was published by the Department of Justice in the Federal Register, 85 Fed. Reg. 42919-02 (July 15, 2020), and public comments were solicited in accordance with Department of Justice policy, 28 C.F.R. § 50.7, and Paragraph 84 of the Consent Decree (ECF No. 3-1 at 37). Notice of the proposed Consent Decree was also published by the Texas Attorney General's Office in the Texas Register, 45 Tex. Reg. 5223 (July 24, 2020), and public comments were solicited in accordance with Tex. Water Code § 7.110. The notices described the principal terms of the settlement and each provided a 30-day opportunity for the public to comment on the proposed Consent Decree. The United States and the State jointly received one set of comments from a citizens' group, Bayou City Waterkeeper (joined by other organizations),[1] which is enclosed as Exhibit 1 to this Memorandum. This Memorandum summarizes those comments and includes Plaintiffs' responses. As discussed more fully below, the comments do not provide a basis for rejection of this settlement.

The Court should enter the Consent Decree as a final judgment in this action because, as shown below, it is fair, adequate and reasonable, and consistent with the RCRA, the CAA, the CWA, the Texas Solid Waste Disposal Act, the Texas Clean Air Act and the Texas Water Code, and meets both state and federal standards for approval. In Paragraph 84 of the proposed Consent Decree, Defendants have consented to entry of the Consent Decree without further notice. (ECF No. 3-1 at 37). Accordingly, Plaintiffs respectfully request that the Court sign and enter this Decree.

---

1 The letter submitted by Bayou City Waterkeeper was "joined by local and regional organizations Air Alliance Houston; the Coalition for Environment, Equity, and Resilience; Environment Texas; Healthy Gulf; Houston Sierra Club; Public Citizen; Sierra Club, Lone Star Chapter; Texas Campaign for the Environment; and Turtle Island Restoration Network."

## II.  <u>BACKGROUND</u>

DuPont engaged in the production of agrichemicals at the Facility from 1946 until November 15, 2014. Compl. ¶¶ 66 and 72 (ECF No. 1). The Facility is bounded on the north and east by San Jacinto Bay and on the south and west by other industrial landowners. *Id.* ¶ 68. In January 2008, inspectors from EPA's National Enforcement Investigation Center ("NEIC") conducted a multimedia compliance investigation at the Facility (the "Inspection"). *Id.* ¶ 69.

At the time of the Inspection, the Facility produced agrichemicals (pesticides, herbicides, and insecticides) in its Lannate[2] Process Area; organic chemicals (non-halogenated vinyl compounds) at Plants A and B; and inorganic chemicals (sulfuric acid and hydrofluoric acid). *Id.* ¶ 70. These operations generated waste streams regulated by the RCRA, CAA, CWA and state law. Operations in the Lannate Process Area were shut down in November 2014 after an accidental chemical release killed four employees. In 2016, DuPont announced the permanent closure of the Lannate Process Area, and the only operation that DuPont continues at the Facility is management of the waste water treatment system ("WWTS").[3] The WWTS treated process wastes from the Lannate Process Area prior to cessation of its agrichemicals production in 2014 and continues to treat nonhazardous wastes for tenant operators of other production units at the Facility. *Id.* ¶¶ 70-73.[4]

---

2  Lannate (methomyl) is a water-soluble insecticide.

3  On November 15, 2014, a leak of 23,000 pounds of methyl mercaptan in the Lannate Process Area caused the death of four workers. DuPont shut down the Lannate Process Area while the incident was under investigation. In March 2016, DuPont announced permanent closure of the Lannate Process Area. The leak incident and related violations of the CAA were the subject of a separate complaint filed in this Court on July 23, 2018, in *United States v. E.I. du Pont de Nemours and Company*, No. 4:18-cv-02545, and resolved through a Stipulation of Settlement entered by the Court on September 7, 2018.  State-law violations associated with the November 15, 2014, emissions event were resolved in an agreed administrative order issued by the TCEQ. *See* Agreed Order, *In the Matter of an Enforcement Action Concerning E.I. du Pont de Nemours and Company*, No. 2015-0879-AIR-E (Tex. Comm'n on Envtl. Quality, Nov. 10, 2015).

4  On or about May 30, 2014, DuPont sold its vinyl acetate operations (Plant A and Plant B) to Kuraray

### III.  STATUTORY SCHEME AND COMPLAINT ALLEGATIONS

#### A.  RCRA and Related State Law Violations: Claims 1-11

RCRA establishes a comprehensive program to be administered by EPA regulating the generation, transportation, treatment, storage and disposal of solid waste. EPA promulgated regulations at 40 C.F.R. Parts 260 through 272 applicable to generators, transporters, and treatment, storage and disposal facilities. These regulations generally prohibit the treatment, storage and disposal of hazardous waste without a permit or equivalent "interim status." These regulations also prohibit land disposal of certain hazardous waste.

RCRA allows EPA to authorize States to implement programs in lieu of the federal program, upon a finding that the state program is equivalent to, consistent with, and no less stringent than the federal program. *See* 42 U.S.C. § 6926(b). In Texas, the authorized hazardous waste program is managed by the TCEQ pursuant to the TSWDA and the rules and regulations promulgated thereunder at 30 Tex. Admin. Code ch. 335. When a state obtains such authorization, the federally-authorized state regulations apply in lieu of the federal RCRA regulations in that state. Such federally-approved state regulations are enforceable by the United States pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a).

DuPont utilizes a series of unlined and unpermitted "surface impoundments," as that term is defined by 30 Tex. Admin. Code § 335.1(154) [40 C.F.R. § 260.10], for wastewater management, including the Equalization Basin, the North Aeration Basin, the South Aeration

---

America Inc., which continues to discharge wastes to the wastewater treatment system operated by DuPont. Also, by February 1, 2015, DuPont transferred its fluoroproducts operations to The Chemours Company FC, LLC, which continues to discharge wastewater to the wastewater treatment system. Finally, The LYCRA Company LLC owns and operates a packaging and industrial polymers unit co-located at the Facility that discharges wastewater to the wastewater treatment system.

Basin, the Clean Water Ditch, the Thermal Basin, the Settling Basin and the Emergency

Retention Basin. Compl. ¶ 75.

DuPont operated the Facility as a large quantity generator of hazardous waste under

RCRA, and notified EPA and TCEQ of that status pursuant to 30 Tex. Admin. Code §§ 335.6(c)

(Notice of Registration) and 335.9(a)(2) (Annual Waste Summary). *Id.* ¶ 82. The State, through

the TCEQ, issued Hazardous Waste Permit No. 50213 to DuPont on November 8, 1990, which

authorized DuPont to manage, treat and store hazardous waste in container storage areas and in

tanks at the Facility. The Hazardous Waste Permit has never authorized DuPont to store, treat or

dispose of hazardous waste in any surface impoundment at the Facility. *Id*. ¶ 76.

Based on the Inspection and additional information obtained from DuPont, the Complaint

alleges violations of RCRA and state law for DuPont's failure to make RCRA hazardous waste

determinations of its process wastes, *id.* ¶¶ 91-109; storage/disposal of K156 and K157

(carbamates) and F002 listed hazardous wastes in the surface impoundments in violation of

RCRA's permit requirements, *id*. ¶¶ 111-16, 123-28, 136-45, 155-60; violations of RCRA's land

disposal restrictions, *id*. ¶¶ 117-22, 129-35, 146-54; and violations of RCRA's financial

assurance requirements, *id.* ¶¶ 168-72.

**B. CAA and Related State Law Violations: Claims 12-21**

The Complaint also alleges multiple violations of the CAA and equivalent state laws.

Title I of the CAA establishes a technology-based control program (i.e., based on Maximum

Achievable Control Technology, or "MACT") to reduce stationary source emissions of

hazardous air pollutants ("HAPs"). *See* CAA Section 112(d), 42 U.S.C. § 7412(d). Section 112

of the CAA, 42 U.S.C. § 7412, directs EPA to promulgate standards to reduce emissions of listed

HAPs. These standards are collectively referred to as the National Emission Standards for

Hazardous Air Pollutants or "NESHAP." Federal NESHAP provisions for general and specific source categories of HAPS are found in 40 C.F.R. Part 63.

The Facility has multiple emissions points for HAPS subject to provisions of the NESHAPs. Claims 12-20 concern violations of the Pesticide Active Ingredient MACT standard ("PAI MACT"), 40 C.F.R. Part 63, Subpart MMM, in the Lannate Process Area (requirements for control of HAP emissions from process vents and in tanks and wastewaters, including categorization of waste streams for control purposes, and reporting, testing, monitoring and inspection requirements).[5] Compl. ¶¶ 173–265. Claim 21 alleges violations of the Polyether Polyols MACT ("PPP MACT"), 40 C.F.R. Part 63, Subpart PPP, at the Biological Treatment Unit (requirements for control of HAP emissions from process units, including performance testing requirements for the biological treatment unit).[6] *Id.* ¶¶ 266–73.

These violations of the CAA are also violations of the Texas Clean Air Act, Tex. Health & Safety Code ch. 382, and associated regulations, and are subject to civil penalties and injunctive relief under Chapter 7 of the Texas Water Code, Tex. Water Code ch. 7.

### C.  **CWA: Claim 22**

Claim Twenty-Two of the Complaint alleges violations of the Spill Prevention, Control and Countermeasures ("SPCC") requirements of section 1321 of the CWA, 33 U.S.C. § 1321(j) and 40 C.F.R. Part 112, which establish requirements for procedures, methods, and equipment to prevent discharges of oil and hazardous substances from onshore facilities into or upon the navigable waters of the United States or adjoining shorelines. Specifically, the Complaint alleges

---

5  TCEQ incorporates by reference the PAI MACT standards at 30 Tex. Admin. Code § 113.700 and alleges violations of its provisions.

6  TCEQ incorporates by reference the PPP MACT standards at 30 Tex. Admin. Code § 113.730 and alleges violations of its provisions.

that DuPont failed to prepare and fully implement an SPCC plan that meets the requirements of 40 C.F.R. § 112.7, and failed to provide adequate secondary containment for vessels containing oil as required by 40 C.F.R. §§ 112.7 and 112.8. *Id.* ¶¶ 274-79.

### D. State Attorneys' Fees: Claim 23

Claim 23 of the Complaint alleges that the State is entitled to attorneys' fees and costs pursuant to Tex. Water Code § 7.108. *Id.* ¶¶ 280-82.

## IV. SUMMARY OF THE DECREE

The Consent Decree negotiated by the Parties resolves the claims alleged in the Complaint and requires that DuPont pay a total civil penalty of $3,195,000 ($1,710,000 payable to the United States and $1,485,000 payable to the State), Decree (ECF 3-1) at ¶¶ 22 and 24, and perform an extensive package of injunctive relief. *Id.* ¶¶ 11-13 and Apps. A-C (ECF 3-1 at pp. 10-11, 45-57). Additionally, DuPont must pay the State's attorneys' fees of $225,000. *Id.* ¶ 24.

Because DuPont ceased production of agrichemicals at the Facility in 2014, the injunctive relief addresses continuing requirements for its limited operations and corrective measures to investigate and remediate, as necessary, residual contamination in surface impoundments. The CAA injunctive relief is set forth in Appendix A (ECF 3-1 at pp. 10 and 45-46) and requires that DuPont either demonstrate that the Equalization Basin manages wastewaters consistent with PPP MACT wastewater requirements, or perform corrective action to bring the Equalization Basin into compliance. The CWA injunctive relief is set forth in Appendix B (ECF 3-1 at pp. 11 and 47- 48), and requires that DuPont address deficiencies in its SPCC compliance by certifying compliance with secondary containment at its diesel storage tank, demonstrating adequate secondary containment for its oil-containing transformers, and completing revisions to its SPCC Plan. RCRA injunctive relief is set forth in Appendix C (ECF

3-1 at pp. 11 and 49-57) and consists primarily of DuPont's investigation and, as necessary, remediation of sediments within, and soils or groundwater beneath, certain surface impoundments in accordance with Texas regulations. *Id.* at pp. 50-57. DuPont will also make hazardous waste determinations on remaining waste streams and prepare a RCRA Waste Management Plan for management of hazardous waste at the Facility. *Id.* at pp. 49-50. The Decree also contains robust reporting requirements, including requiring DuPont to certify information regarding compliance with and implementation of the Consent Decree. Decree ¶¶ 27-34. To incentivize compliance, the Decree imposes stipulated penalties for noncompliance with various requirements, including failure to pay the civil penalty and failure to comply with the emissions limits and reporting obligations. *Id.* ¶¶ 35-47.

## V.  STANDARD FOR ENTRY

In reviewing a proposed consent decree, the reviewing court must ascertain only that the settlement is "fair, adequate and reasonable." *United States v. City of Miami*, 664 F.2d 435, 441 (5th Cir. 1981) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *Ruiz v. McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984) ("the cardinal rule is that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties") (citing *Cotton*, 559 F.2d at 1330); *United States v. Browning-Ferris Indus. Chem. Servs., Inc.*, 704 F. Supp. 1355 (M.D. La. 1988) (approving a consent decree resolving claims under the CAA and other environmental statutes); *United States v. ATP Oil  & Gas Corp.*, No. 13-262, 2015 WL 13648078, at *2 (E.D. La. Jan. 28, 2015); *United States v. ConocoPhillips Co.*, No. 2:10-cv-1556, 2011 WL 1113703 (W.D. La. March 24, 2011) (resolving claims under CERCLA and CWA and applying the standard of reasonable, fair and consistent with the purpose of the statute under which the action is brought) (citing *City of Miami*, 664 F.2d at 441); *United States v.*

*Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir. 1990). If the suit seeks to enforce a statute, the decree must be consistent with the public objectives sought to be attained by Congress. *City of Miami*, 664 F.2d at 441.

Further, the court must conclude that the Decree is not the product of "fraud, collusion or the like." *Cotton*, 559 F.2d at 1330. "In the absence of fraud or collusion, the trial court should be 'hesitant to substitute its own judgment for that of counsel.'" *Ruiz v. McKaskle*, 724 F.2d at 1152 (quoting *Cotton*, 559 F.2d at 1330).

The court "is not to substitute its judgment for that of the parties to the decree." *United States v. Wallace*, 893 F. Supp. 627, 631 (N.D. Tex. 1995). The court is not permitted "to delete, modify or substitute certain provisions of the settlement." *Cotton*, 559 F. 2d at 1331-32. However, "[t]he [c]ourt must eschew any rubber stamp approval in favor of an independent evaluation, [stopping] short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Wallace*, 893 F. Supp. at 632. "The trial court in approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy. . ." *City of Miami*, 664 F.2d at 441 n.13 (Rubin, J. concurring). Further, the Court's analysis should not be so specific as to amount to a judgment on the merits. *Wallace*, 893 F. Supp. at 632.

Settlement of lawsuits by agreement have always been favored, as "[a]n amicable compromise provides the more speedy and reasonable remedy for the dispute." *City of Miami*, 614 F.2d 1322, 1334-35 & n.25 (5th Cir. 1980), *aff'd*, 664 F.2d 435 (1981) (en banc) (quoting *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976)). The presumption in favor of settlement "is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys

substantial expertise in the environmental field." *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991) (citing *Cannons*, 899 F.2d at 84). Approval by federal agencies which are charged with the implementation and review of various environmental protection statutes carries with it a strong presumption of the validity of the proposed consent decree. *Wallace*, 893 F. Supp. 627. The presence of the Justice Department in a suit allow[s] the court "safely to assume that the interests of all affected [have] been considered." *Williams v. City of New Orleans*, 729 F.2d 1554, 1560 (5th Cir. 1984) (quoting *City of Miami*, 644 F.2d at 1332 n.18).

The district court must determine if the civil penalty is appropriate and "is required to consider a myriad of factors, some of which are mitigating in nature, when determining the appropriate civil penalty under the CWA." *Environmental Conservation Org. v. City of Dallas*, 529 F.3d 519, 530 (5th Cir. 2008). "The district court is not bound to impose the maximum penalty afforded under the [CWA]." *Id*. The amount of any civil penalty, the analysis of the factors, and the process of weighing the factors are "highly discretionary with the trial court." *Environment Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 66 F. Supp.3d 875, 904 (S.D. Tex. 2014).

## VI.  <u>ARGUMENT</u>

The proposed Consent Decree meets the legal standard for entry by this Court.

### A.  <u>Fairness</u>

Consideration of the fairness factor by courts normally includes consideration of both procedural and substantive aspects. *See Wallace*, 893 F. Supp. at 632 (citing *Cannons*, 899 F.2d at 86). In analyzing procedural fairness, courts consider such factors as candor, openness and bargaining balance in the negotiations. *Wallace*, 893 F. Supp. at 632. *Cannons* was decided

under the Comprehensive Environmental Response, Compensation and Liability Act

("CERCLA"), 42 U.S.C. §§ 9601 *et seq*. A number of courts in and outside the Fifth Circuit have

followed the *Cannons* entry standard that a proposed decree must be fair, reasonable, and

consistent with the applicable statute. *Cannons*, 899 F.2d at 85; *In re ASARCO LLC*, No. 05-

21207, 2009 WL 8176641, at *37-45 (Bankr. S.D. Tex. June 5, 2009) (CERCLA, RCRA); *ATP*

*Oil & Gas*, 2015 WL 13648078, at *2 (CWA, OCSLA); *Bragg v. Robertson*, 54 F. Supp. 2d 653,

663 (1999), *aff'd*, 248 F.3d 275 (4th Cir. 2001) (CWA, NEPA); *U.S. v. Lexington-Fayette Urban*

*Cnty. Government,* 591 F.3d 484, 489-91 (6th Cir. 2010) (CWA); *U.S. v. Comunidades Unidas*

*Contra La Contamination*, 204 F.3d 275, 280-81 (1st Cir. 2000) (CAA, CWA, CERCLA,

RCRA).

     **1. <u>Procedural Fairness</u>**. Plaintiffs and Defendant engaged in open and candid

discussions of the alleged RCRA, CAA, CWA and related state law violations and the measures

to address such violations. Each party was represented by multiple experienced attorneys, as well

as technical and professional staff. Given the complexity of the claims, there was an extensive

discussion, and frequent dispute, of the factual and legal basis for the claims. Also, the terms of

proposed injunctive relief required significant discussion and revision over time.. Over a period

of several years, the parties conducted meetings both in person and via frequent telephone

conferences, and exchanged numerous written proposals. Counsel for Plaintiffs and DuPont

advocated for their respective positions and compromised for settlement purposes only when in

the interests of the represented party. The exchange of factual information and legal positions

allowed the parties to consider litigation risks and other factors when determining an appropriate

settlement. In reviewing and approving the proposed Consent Decree, senior representatives of

DOJ, EPA, TCEQ and the Texas Attorney General's Office, as well as the Defendant, ultimately

determined that the settlement is fair. The process followed in negotiating the Decree clearly shows arms-length and open negotiations and provides a clear basis for this Court to conclude that the Decree is procedurally fair.

2. **Substantive Fairness**. Although substantive fairness in environmental cases often raises an issue of comparative fault among multiple potentially liable parties, *Cannons,* 899 F.2d at 79, that is not an issue in this case because DuPont is the only liable party. Decrees are considered to be substantively fair if the parties engaged in arms-length negotiations represented by experienced counsel and worked cooperatively to assess the violations and injury and develop corrective measures that will achieve regulatory compliance and address any injury in light of the evidence and potential litigation risks to the parties. *See ConocoPhillips*, 2011 WL 1113703; *In re ASARCO LLC*, No. 05-21207, 2009 WL 8176641, at *37-45 (Bankr. S.D. Tex. June 5, 2009) (CERCLA, RCRA); *ATP Oil & Gas*, 2015 WL 13648078, at *2 (CWA, OCSLA). The proposed Consent Decree in this case clearly meets that standard.

B.  **Reasonableness and Adequacy**

In *Cotton*, 559 F.2d at 1330, the Fifth Circuit stated the fairness, adequacy and reasonableness of the proposed Decree "should focus upon the terms of the proposed settlement" and such "terms should be compared with the likely rewards the class [plaintiffs] would have received following a successful trial of the case." The Fifth Circuit went on to state that the "relief sought in the complaint may be helpful to establish a benchmark by which to compare the settlement terms." *Id*. But when reviewing the adequacy of a settlement, "the court must be mindful that 'inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" *Ruiz*, 724 F.2d at 1152 (quoting *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y.1972).

The proposed Decree addresses the relief sought in the Complaint in this civil action by (1) ordering DuPont to take appropriate measures to correct noncompliance and investigate and remediate, as necessary, remaining contamination in or from surface impoundments, and (2) assessing an appropriate civil penalty. In assessing reasonableness, the Court need not determine whether the governments reached the best possible settlement, *see United States v. Union Elec. Co.*, 934 F. Supp. 324, 331 (E.D. Mo. 1996), *aff'd,* 132 F.3d 422 (8th Cir. 1997) (quoting Arizona v. Nucor Corp., 825 F. Supp. 1452, 1456 (D.Ariz.1992), aff'd sub nom ine, Arizona v. Components, Inc., 66 F.3d 213 (9th Cir.1995), but instead whether the Decree will likely be effective as a vehicle for reducing environmental pollution. *See Cannons,* 899 F.2d at 89. Plaintiffs believe this case, though strong in terms of the likelihood of establishing violations of the CAA, CWA, RCRA and state law, nonetheless presents litigation risks in terms of the kind and number of violations, the civil penalty that the Court might award, and the injunctive relief that the Court might impose.

Defendant disputes many of the violations asserted, including the presence of hazardous wastes in its process wastes and surface impoundments at the Facility, and it would likely maintain these arguments as to the type and number of violations if the claims were litigated. In addition, the shutdown of the Facility in 2014 ended many of the operating violations alleged. DuPont would further contend that many violations could be viewed as being mere technical instances of noncompliance. Plaintiffs believe they would overcome these arguments, but recognize that the claims face defenses and litigation risks.

**1.   <u>The Civil Penalty is Reasonable and Adequate</u>.**

It is reasonable that DuPont be required to pay significant penalties for the CAA, CWA and RCRA violations alleged in the Complaint. Civil penalties play a necessary and important

role in EPA's enforcement program to deter future violations and encourage compliance by DuPont and others in the industry. But the settlement amount agreed by the parties is based on informed compromise and not simply the maximum civil penalties potentially available in a best case litigation scenario. As explained below, the total $3,195,000 civil penalty amount to be paid Plaintiffs is reasonable and adequate.

Section 113(e)(1) of the CAA, 42 U.S.C. § 7413(e)(1), instructs the "Administrator or the court, as appropriate," to consider specific penalty factors "(in addition to such other factors as justice may require)" when determining an appropriate civil penalty. These factors, known as the statutory penalty factors are: the seriousness of the violations; the economic benefit of noncompliance; any other penalty for the same incident; the violator's compliance history; good faith efforts to comply; the duration of the violation(s); the size of the business; and the economic impact of the penalty on the violator.

Section 311(b)(8) of the CWA, 33 U.S.C. § 1321(b)(8), instructs courts to consider nearly identical penalty factors when determining a civil penalty for the SPCC violations: seriousness of the violation; economic benefit to violator; degree of culpability; other penalties for the same incident; history of prior violations; the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge; the economic impact of the penalty on the violator; and any other matters as justice may require.

Section 3008(g) of RCRA, 42 U.S.C. § 6928(g), authorizes courts to award civil penalties for violations of RCRA, but it does not identify factors for courts to consider in awarding a penalty. Section 3008(a)(3), 42 U.S.C. § 6928(a)(3), however, identifies two factors for EPA to consider when issuing an administrative penalty: seriousness of the violation and any good faith efforts to comply with applicable requirements. In accordance with EPA settlement policy, the

United States applies these factors and others, including economic benefit to the violator, duration of violations, culpability, and good faith efforts to comply, when considering an appropriate civil penalty under RCRA.

Notably, the statutory factors, while instructive, apply to contested cases and not when evaluating the appropriate penalty amount in a negotiated settlement. Still, these factors may assist the Court when considering the proposed penalty and are discussed further below. The civil penalties to be paid under the proposed Consent Decree are reasonable and adequate when compared with these factors. The penalty to be paid to the United States and to the State is also consistent with EPA's published civil penalty policies applicable to settlement of claims under the CAA, CWA and RCRA, which are derived from the statutory factors.

Many violations were serious. Violations of regulations that result in excess emissions, or the potential for excess emissions or discharges into air or water, or contamination of sediments and soils, are serious matters involving the protection of human health and the environment. Notably, the CWA violations alleged did not result in an actual discharge. Reporting violations are also significant even if they do not result in actual or potential releases of contaminants, because the federal and state environmental agencies rely upon honest and complete reporting to maintain their oversight role.

Regarding economic benefit to DuPont, Plaintiffs considered the costs avoided or deferred by DuPont by it not fully complying with the regulations at issue in the Complaint. Some violations did result in avoided expenditures on capital projects, such as tanks, but others resulted in nominal economic benefit from lower-cost operational protocols and practices. Plaintiffs determined that the proposed civil penalties exceed the economic benefit likely to be provable at trial.

Regarding the degree of culpability, DuPont has disputed the factual and legal basis for many of the claims alleged, including the presence of hazardous wastes in certain process waste streams, and would likely do so at trial. DuPont should have made a better effort to comply with regulations, but Plaintiffs recognize that some regulations are subject to interpretation and some provide for more than one method of compliance.

Plaintiffs are not aware of any other penalties paid by DuPont for the alleged violations set forth in the Complaint. DuPont did pay a separate penalty of $3,100,000 in the settlement of a separate complaint concerning its violations of Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7), and 40 C.F.R. Part 68, and the related accidental release of methyl mercaptan in the Lannate Process Area on November 15, 2014, that resulted in employee deaths and eventual shutdown of DuPont's chemical production at the Facility. *United States v. E. I. du Pont de Nemours and Company*, No. 4:18-cv-02545. In addition, DuPont was assessed an administrative penalty of $25,000 for state claims arising from that incident. See Agreed Order, *In the Matter of an Enforcement Action Concerning E.I. du Pont de Nemours and Company*, No. 2015-0879-AIR-E (Tex. Comm'n on Envtl. Quality, Nov. 10, 2015). Those claims, and the November 15, 2014, accident itself, are not related to the claims in this Complaint.

DuPont's compliance history, reviewed by Plaintiffs, did not indicate a significant upward adjustment to the penalty. Regarding the "good faith efforts to comply" factor, DuPont negotiated with the governments in good faith, and it did make certain improvements to Facility operations after the 2008 Inspection and during the course of negotiations. It could have begun investigations of surface impoundments sooner, but it disputed the necessity for such relief.

The duration of the violations varied from single day events to potentially multi-day violations. Residual contamination likely remains in surface impoundments (a subject for

investigation), but many violations were limited by the shutdown of the Lannate Process Area in November 2014, and some violations were potentially corrected by repairs or additions to, or replacement of, equipment before and after the shutdown.

DuPont is a large corporation, and the civil penalties to be paid reflect its size and do not adversely impact its ability to stay in business. Additionally, the CAA and CWA include consideration of "such other factors as justice may require." This language codifies the discretion that the EPA Administrator and the Court retain in arriving at an appropriate and fair penalty amount in light of litigation risk on disputed claims, expenditure of the parties' resources, and other considerations.

With respect to the State's claims, when determining appropriate penalties payable to the State for violations of Texas law alleged in the Complaint, Texas courts look to the Texas Constitution in considering whether civil penalties are fair. *See State v. Morello*, 547 S.W.3d 881, 889 (Tex. 2018), *reh'g denied* (June 22, 2018), *cert. denied*, 139 S.Ct. 575 (2018), quoting Tex. Const. art. I, § 13 ("[e]xessive bail shall not be required, nor excessive fines imposed."). Within that broad limit, however, Texas courts generally hold that "[P]rescribing fines is a matter within the discretion of the legislature." *Morello, id.*, quoting *Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex. 1980). Texas courts "will not override the legislature's discretion, 'except in extraordinary cases, where it becomes so manifestly violative of the constitutional inhibition as to shock the sense of mankind.'" *Morello, id.*, quoting *State v. Laredo Ice Co.*, 73 S.W. 951, 953 (Tex. 1903) (internal quotation marks and citation omitted). The civil penalty awarded to the State in this case is well within the limits set by the Texas legislature. See Tex. Water Code § 7.102; Compl. ¶ 32 at 8. The State's penalty of $1,485,000 is less than the penalty payable to the United States in the settlement, and does not "shock the sense of mankind."

2.    **The Proposed Injunctive Relief is Reasonable and Adequate**.

The extensive injunctive relief required in the Decree addresses violations identified in the Complaint that remain of concern at the Facility even after the shutdown.  It requires investigation and corrective action for remaining contamination, if found, in the sediments of surface impoundments and soils or ground water beneath, as necessary. It will also improve operating procedures, require the identification and proper handling of process waste streams, require related emissions controls for the Equalization Basin, and require compliance with SPCC requirements. These requirements are consistent with underlying federal and state law and will increase protections to human health and the environment at and around the Facility.

Plaintiffs believe they would be successful in persuading this Court to order injunctive relief to address the violations, which go to the remedial considerations stated by the *Cannons* court. The Decree, however, imposes significant and potentially costly injunctive relief obligations on DuPont. It is unlikely that lengthy litigation or trial would result in more expansive injunctive relief than the parties have already agreed to under the Decree. The Decree allows the parties to avoid prolonged and costly litigation and a further delay in implementing agreed-upon compliance measures. In summary, the Decree is reasonable and adequate under both the *Cotton* and *Cannons* factors.

C.  **Fidelity To The Statute**

Both *Cotton* and *Cannons* require the Consent Decree to be consistent with the applicable statute. This enforcement action was initiated due to DuPont's violations of the CAA, CWA, RCRA and related state law. The Decree's provisions are aimed at addressing these violations and improving compliance with the law, while imposing an appropriate penalty considering the

penalty factors, litigation risks and likely results at trial. Therefore, the Decree is consistent with the requirements of federal and state law cited in the Complaint.

Finally, the Fifth Circuit instructs the Court to determine that the Decree is not the product of fraud or collusion. These negotiations were conducted at arm's length by sophisticated counsel with expert support. Nothing is presented in this litigation that would support an allegation of fraud or collusion regarding the Decree.

## VII.  <u>RESPONSE TO PUBLIC COMMENTS</u>

The United States and the State received the same set of comments from Bayou City Waterkeeper (joined by other public interest groups identified in N.1 ) dated August 14, 2020, Exhibit 1, in response to the notices of the settlement in the Federal Register and the Texas Register. The United States and the State have given careful consideration to the public comments received. This Memorandum summarizes and addresses the comments as they relate to the standard for entry of the proposed Consent Decree.

The primary comment is that the civil penalty of $3,195,000 is "insufficient to deter future noncompliance by DuPont." Letter at 2. The commenter states that maximum penalties for the alleged violations, if each violation continued day to day until shutdown of the Facility, could exceed $1 billion. *Id*. at 3. The commenter repeatedly references the November 15, 2014, accidental release that resulted in the deaths of four employees and the shutdown of the Facility, and mistakenly conflates the conduct that contributed to that accident with the separate and unrelated violations at issue in this action. *Id*. at 2, 4 and 5. To be clear, Plaintiffs are not alleging that the violations resolved through this Decree caused or contributed to the accident or the resulting deaths in 2014. So, while the accident is relevant to DuPont's compliance history, it is not relevant to other factors such as seriousness of the violations alleged in the Complaint or

DuPont's efforts to comply with regulations at issue. The commenter also remarks that the penalty is small relative to DuPont's worth, will have little economic impact on DuPont, and does not consider the economic benefit to DuPont from revenue earned while operating the Facility during the period of violations. *Id*. at 4-5. Finally, the commenter requests an extension of the comment period for an additional thirty days and requests a public meeting to enable further comment on the violations that "killed four workers and caused additional harms to the City of La Porte."

In asserting a maximum recoverable penalty amount, the commenter assumes the Court would award maximum penalties for many violations on a per day continuing basis over several years. *Id.* at 3. The violations resolved in the settlement are alleged violations which have not been established in court by evidence and are subject to defenses that may be asserted by DuPont. Therefore, the number of violations the commenter assumes would be proven in litigation remains speculative. Second, the commenter fails to acknowledge or take into account that a court may exercise discretion in determining the civil penalty to be paid under these statutes, and that DOJ and EPA may exercise enforcement discretion, consistent with applicable laws, with respect to the civil penalty they seek in a settlement.

As described *supra*, in reaching the agreed penalty amount, Plaintiffs considered the federal statutory penalty factors, EPA' settlement policies, litigation risks posed with respect to complicated and disputed claims for which DuPont asserts defenses, the current status of the Facility, the value of a settlement now that puts money to work to address noncompliance and corrective action as necessary, and the value of conserving finite government resources required to litigate over a closed Facility where settlement terms will achieve our goals for cleanup and

other injunctive relief. Under these circumstances, Plaintiffs believe that the proposed civil penalty is adequate and reasonable.

The United States published notice of the settlement in the Federal register on July 15, 2020, with a 30-day comment period that expired on August 15, 2020. The State published its notice in the Texas Register on July 24, 2020, with a 30-day comment period that expired on August 24, 2020. Therefore, the public was given at least 39 days to submit comments. As of this date, no additional comments have been received. Neither 28 C.F.R. § 50.7 nor TWC § 7.110 imposes a requirement by law or policy that a public meeting be held to discuss the terms of settlement of the violations alleged for this closed Facility. Given the significant environmental and public health concerns that will be addressed by the Decree and the length of time already taken to negotiate the proposed settlement, Plaintiffs concluded that any further delay in securing entry of the Decree was neither justified nor in the public's interest.

For these reasons, the comments do not provide a basis for Plaintiffs to reconsider, reject or modify this settlement. The Court should enter the Consent Decree as a final judgment in this action because it is fair, adequate and reasonable, and consistent with the CAA, CWA, RCRA, the Texas Solid Waste Disposal Act, the Texas Clean Air Act and the Texas Water Code, and thus meets both state and federal standards for approval.

# VIII.  CONCLUSION

Based on the foregoing discussion, Plaintiffs request that the Court enter the Decree and sign the Decree on page 35. The proposed Consent Decree, signed by all parties, is attached to the Motion.

Respectfully submitted,

KAREN DWORKIN
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

*/s/ Kenneth G. Long*
KENNETH G. LONG
Senior Attorney
DC Bar No. 414791
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Telephone:   202-514-2840
Facsimile:   202-616-6584
kenneth.long@usdoj.gov
ATTORNEY-IN-CHARGE


RYAN K. PATRICK
United States Attorney
Southern District of Texas

By:      */s/ Andrew A. Bobb*
ANDREW A. BOBB
Assistant United States Attorney
SBOT No. 02530350 / Fed Bar # 9041
1000 Louisiana, Suite #2300
Houston, Texas 77002
Telephone:      713 567-9766
Facsimile:      713 718-3303

ATTORNEYS FOR THE UNITED STATES

*United States and State of Texas v. E.I. du Pont de Nemours and Company*

FOR THE STATE OF TEXAS,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

PRISCILLA M. HUBENAK
Chief, Environmental Protection Division


*/s/ Thomas H. Edwards*
Thomas H. Edwards
Assistant Attorney General
Tex. Bar No. 06461800
S.D. Tex. No. 152099
Thomas.Edwards@oag.texas.gov

Jake K. Brown
Assistant Attorney General
Tex. Bar No. 24084234
S.D. Tex. No. 3470594
Jake.Brown@oag.texas.gov

Office of the Attorney General
Environmental Protection Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

ATTORNEYS FOR THE STATE OF TEXAS

**EXHIBIT 1**



VIA EMAIL

Assistant Attorney General
U.S. Department of Justice—ENRD
pubcomment-ees.enrd@usdoj.gov

Thomas Edwards, Assistant Attorney General
Office of the Attorney General, State of Texas
Thomas.Edwards@oag.texas.gov

August 14, 2020

RE: Comments to Consent Decree; *United States of America and State of Texas v. E.I. Du Pont de Nemours and Co.*, Case No. 4:20-cv-02423, in the U.S. District Court for the Southern District of Texas

To the Assistant Attorney Generals for the United States and State of Texas:

**Bayou City Waterkeeper**,[1] joined by local and regional organizations **Air Alliance Houston**; the **Coalition for Environment, Equity, and Resilience**; **Environment Texas**; **Healthy Gulf**; **Houston Sierra Club**; **Public Citizen**; **Sierra Club, Lone Star Chapter**; **Texas Campaign for the Environment**; and **Turtle Island Restoration Network** submit the following comments to the proposed consent decree in *United States of America and State of Texas v. E.I. Du Pont de Nemours and Co.*, Case No. 4:20-cv-02423, in the U.S. District Court for the Southern District of Texas.

For years, DuPont's plant in La Porte, Texas ("DuPont Plant") did not comply with safety measures required by federal law. As a direct result, on November 15, 2014, a leak of nearly 24,000 pounds of methyl mercaptan caused the death of four DuPont employees: Crystal Rae Wise, 53; Wade Baker; Gilbert Tisnado, 48; and Gilbert's younger brother, Robert Tisnado, 39.

---

[1] Bayou City Waterkeeper is a nonprofit advocacy organization working to protect and restore the waters and wetlands making up the Lower Galveston Bay Watershed on behalf of communities across the region, including La Porte, Texas.

The U.S. Chemical and Safety Board attributed the fatal release to "a flawed engineering design and the lack of adequate safeguards" at the DuPont Plant. In 2018, DuPont paid a $3.1 million civil penalty for violating EPA's chemical accident prevention program. For more than a dozen willful, repeat or serious violations leading to the four deaths at the DuPont Plant, the Occupational Safety and Health Administration fined DuPont about $370,000. DuPont also entered a confidential civil settlement with at least one of the victim's families.

On July 9, 2020, the United States and the State of Texas filed a complaint against DuPont to address the extensive violations of federal environmental statutes that contributed to the chemical release at the DuPont Plant. That same day, the United States and State of Texas lodged the final consent decree with the district court. The complaint lists 22 claims under the Clean Air Act, Resource Conservation Recovery Act, and Clean Water Act, for which hundreds of millions, if not over a billion, dollars in statutory penalties potentially could be recovered if the litigation were to move forward.[2] The consent decree frees DuPont from all liability for the federal environmental claims under the complaint and requires DuPont to pay only $3.195 million in penalties.

On July 15, the United States published notice of the consent decree in the Federal Register and opened a 30-day public comment period. On July 24, the State of Texas published notice of the consent decree in the Texas Register and also opened a 30-day public comment period.

Air Alliance Houston, Bayou City Waterkeeper, the Coalition for Environment, Equity, and Resilience, Environment Texas, Healthy Gulf, Houston Sierra Club, Public Citizen, Sierra Club, Lone Star Chapter, Texas Campaign for the Environment, and Turtle Island Restoration Network submit the following comments to the consent decree:

## 1. Penalties of $3.195 million are insufficient to deter future noncompliance on the part of DuPont, a $130 billion corporation

If the Court entered final judgment on each of the 22 federal claims in the complaint based on the facts alleged by the United States and the State of Texas, DuPont could potentially be responsible for hundreds of millions, if not over a billion, in statutory penalties. But the consent decree, lodged the same day the case was filed and without even minimal litigation, contemplates only $3.195 million in penalties. This discrepancy should give the Court serious pause.

---

[2] A 23rd claim relates to the State of Texas' recovery of attorney's fees.

### a. Federal statutes allow substantial penalties for the claims in the complaint

The complaint identifies 22 claims under the Clean Air Act ("CAA"), Resource Recovery Conservation Act ("RCRA"), and the Clean Water Act ("CWA"). Each statute authorizes substantial penalties:

Under the CAA, persons are liable for up to $25,000 per day of violations in penalties. 42 U.S.C. § 7413(b). When adjusted for inflation, persons are liable for up to $32,500 per day of violation occurring from March 15, 2004 through January 12, 2009; up to $37,500 per day of violation occurring after January 12, 2009 through November 2, 2015; and up to $101,439 per day for each violation occurring after November 2, 2015, and assessed on or after January 13, 2020. 40 C.F.R. Part 19.

RCRA sets forth a similar penalty scheme: Any person who violates RCRA shall be liable to the United States for a civil penalty of up to $25,000. Each day that a violation persists "shall" constitute a separate violation. 42 U.S.C. § 6928(g). Adjusted for inflation, RCRA authorizes $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009; up to $37,500 per day for each violation occurring after January 12, 2009 through November 2, 2015; and up to $75,867 per day for each violation occurring after November 2, 2015, and assessed on or after January 13, 2020.

Under the CWA, persons also are liable for up to $25,000 per day of violation in penalties. 33 U.S.C. § 1321(b)(7)(c). In cases of gross negligence or willful misconduct, the company shall be subject to a civil penalty of not less than $100,000, and not more than $3,000 per barrel of unit of hazardous substance discharged. 42 U.S.C. § 1321(b)(7)(d). This fine has been adjusted upward for inflation: $32,500 for each such violation occurring after March 15, 2004 through January 13, 2009; up to $37,500 for each such violation occurring after January 13, 2009 through November 2, 2015; and up to $48,192 for each such violation occurring after November 2, 2015, and assessed on or after January 13, 2020. 40 CFR § 19.4.

As alleged, many of the claims in the complaint cover a nearly 2,500-day time period, stretching from the time of an inspection in January 2008, when DuPont was put on notice of its legal violations until November 2014, when the chemical release occurred. **If the defendants were to prove all their claims against DuPont, the Court could order DuPont to pay over $1 billion in penalties.**

**b.  Federal statutory and regulatory factors favor a higher penalty here**

The CAA identifies the following factors for courts to consider when setting penalties, 42 U.S.C. § 7413(e)(1).

- Size of the business;
- Economic impact of the penalty on the business;
- The violator's full compliance history and good faith efforts to comply;
- Duration of the violation as established by any credible evidence;
- Payment by the violator of penalties previously assessed for the same violation;
- Economic benefit of noncompliance; and
- Seriousness of the violation.

The CWA identifies similar factors for courts to consider when setting penalties, 33 U.S.C. § 1321(b)(8), and the EPA has identified similar guidelines for setting penalties for RCRA claims. *See* 42 U.S.C. § 6928(g). The U.S. Supreme Court grants trial judges significant discretion in assessing these factors. *Tull v. United States*, 481 U.S. 412, 427 (1987).

These statutory factors show that DuPont's legal violations warrant a much more serious penalty than proposed here:

- ***Size of the business.*** DuPont recently was the world's largest chemical company in terms of sales. Its merger with Dow Chemical has been reported to be worth an estimated $130 billion. With 2018 total revenue of $86 billion, Dow/DuPont ranked 35th on the 2019 Fortune 500 list of the largest United States public corporations. This factor weighs in favor of a larger penalty.
- ***Economic impact of the penalty on the business.*** In 2018, DuPont, now known as DowDuPont, generated revenue of $86 billion.[3] A fine of $3 million amounts to less than 0.03% of the company's annual revenue. That is like fining the average Texas household, which earned approximately $60,000 in 2018, $18 for killing four of their neighbors. At best, this penalty will have a negligible economic effect on DuPont, and likely have little or no influence on DuPont's future decisions.
- ***DuPont's full compliance history and good faith efforts to comply.*** As alleged in the complaint, DuPont had failed to comply with federal requirements at its LaPorte plant for years before the chemical release killed four workers; had DuPont complied sooner, the deaths could have been avoided. More broadly, the DuPont has a history of violations in its facilities across the United States.

---

[3] https://web.archive.org/web/20190823232428/https://fortune.com/fortune500/dowdupont/

According to EPA's ECHO data, DuPont has 40 facilities nationwide with violations, 12 of which the EPA has classified as significant. DuPont's history of noncompliance both at the LaPorte plant and in other facilities favors a larger penalty here.

- ***Duration of the violation as established by any credible evidence.*** The complaint alleges that many of the legal violations spanned from the date of an inspection on January 15, 2008 until the chemical release on November 15, 2014—2497 days. *See, e.g.*, Complaint ¶¶ 69, 72, 97. Though these dates have not been established by "credible evidence" since the case has not been litigated, these dates likely cannot be disputed. This factor weighs in favor of a significantly higher penalty than proposed under the consent decree.

- ***Payment by DuPont of penalties previously assessed for the same violation.*** DuPont has paid approximately $3.5 million in penalties to OSHA and the EPA for other safety violations associated with the 2014 chemical release. These payments weigh neutrally since they were for different legal violations.

- ***Economic benefit of noncompliance.*** DuPont was on notice of its legal violations for six years before those violations led to a chemical release that killed four workers. Because the government chose not to litigate these claims, we can only assume that DuPont failed to address these violations because it did not want to spend money to bring its facility into compliance with federal law. In responses to these comments, the United States and State of Texas should explain how much revenue the LaPorte Plant generated from 2008 to 2014 to aid the Court in assessing this factor. This factor weighs in favor of a higher penalty.

- ***Seriousness of the violation.*** In addition to causing environmental harms, DuPont's legal violations killed four people. Legal violations resulting in the loss of human life warrant a much higher penalty than proposed here.

These factors support ordering DuPont to pay a higher penalty than has been proposed in the consent decree.

## 2. The public comment period should be extended and include virtual outreach to maximize public participation during the pandemic

The consent decree was lodged on July 9, 2020, the same day that the case was filed, giving the public little time to understand the legal claims against DuPont. Given that DuPont's legal violations killed four workers and caused additional environmental harms in the City of LaPorte, the public deserves sufficient time to weigh in. The pandemic, which has constrained individuals' ability to participate in public processes, also

warrants an extension to the public comment period. We ask for a minimum of 30 more days for the public to comment.

Further, given the seriousness of the legal violations underlying the consent decree, we urge the United States and State of Texas to host a virtual meeting to educate the public about the legal violations and negotiations leading up to this consent decree, as well as other penalties DuPont has had to pay related to the chemical release, and to allow the public the opportunity to give oral comments.

***

If you would like to discuss any of these comments, please contact Kristen Schlemmer, the Legal Director of Bayou City Waterkeeper, at kristen@bayoucitywaterkeeper.org or 713-714-8442 x2.

Sincerely,

Kristen Schlemmer, Legal Director
Audria Cameron, Legal Intern
Bayou City Waterkeeper
713-714-8442 x2
kristen@bayoucitywaterkeeper.org

The following organizations join in these comments:

Air Alliance Houston
Coalition for Environment, Equity, and Resilience
Environment Texas
Healthy Gulf
Houston Sierra Club
Public Citizen
Sierra Club, Lone Star Chapter
Texas Campaign for the Environment
Turtle Island Restoration Network