# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA and STATE OF TEXAS,** § § § | |
| **Plaintiffs,** § § | |
| **v.** § | **Civil Action No. 4:20-cv-02423** |
| **E. I. DU PONT DE NEMOURS AND COMPANY,** § § § | |
| **Defendant.** § § | |

**CONSENT DECREE**

TABLE OF CONTENTS

I.       JURISDICTION AND VENUE ...................................................................................2

II.      APPLICABILITY.......................................................................................................3

III.     DEFINITIONS.............................................................................................................5

IV.      INJUNCTIVE RELIEF REQUIREMENTS FOR COMPLIANCE ...................................6

V.       APPROVAL OF DELIVERABLES .............................................................................7

VI.      PERMITS....................................................................................................................8

VII.     CIVIL PENALTY .......................................................................................................9

VIII.    REPORTING REQUIREMENTS ...............................................................................11

IX.      STIPULATED PENALTIES ......................................................................................14

X.       FORCE MAJEURE ...................................................................................................19

XI.      DISPUTE RESOLUTION .........................................................................................22

XII.     INFORMATION COLLECTION AND RETENTION ....................................................24

XIII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS.........................................26

XIV.     COSTS .....................................................................................................................28

XV.      NOTICES..................................................................................................................28

XVI.     EFFECTIVE DATE ...................................................................................................31

XVII.    RETENTION OF JURISDICTION..............................................................................31

XVIII.   MODIFICATION .......................................................................................................32

XIX.     TERMINATION.........................................................................................................32

XX.      PUBLIC PARTICIPATION ........................................................................................33

XXI.     SIGNATORIES/SERVICE.........................................................................................33

XXII.    INTEGRATION .........................................................................................................34

XXIII.   FINAL JUDGMENT ..................................................................................................34

XXIV. <u>APPENDICES</u> .................................................................................................................34

XXV. <u>26 U.S.C. § 162(f)(2)(A)(ii) IDENTIFICATION</u> ………………………………………35

**WHEREAS**, concurrent with the lodging of this Consent Decree, Plaintiffs, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the State of Texas (the "State") by and through the Texas Commission on Environmental Quality ("TCEQ"), have filed a Complaint in this action against Defendant E. I. du Pont de Nemours and Company ("DuPont" or "Defendant") for alleged environmental violations at its facility located in La Porte, Texas.

**WHEREAS**, the Complaint alleges that DuPont has violated the following environmental statutes and their implementing federal and state regulations at its agrichemicals manufacturing facility located at 12501 Strang Road in La Porte, Harris County, Texas  ("Facility"): the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401-7671q; the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901-6992k; and the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1387; the Texas Clean Air Act ("TCAA"), Tex. Health & Safety Code §§ 382.001-.510; the Texas Solid Waste Disposal Act ("TSWDA"), Tex. Health & Safety Code §§ 361.001-.992; and Chapters 7 and 26 of the Texas Water Code ("TWC"), Tex. Water Code ch. 7, 26.

**WHEREAS**, DuPont ceased its agrichemical manufacturing operations at the Facility in November 2014, but it maintains a wastewater treatment system for third-party tenants at the Facility.

**WHEREAS**, by agreeing to entry of this Consent Decree, DuPont does not admit any liability to the United States or the State arising out of the transactions or occurrences alleged in the Complaint.

**WHEREAS**, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

**NOW, THEREFORE**, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. <u>JURISDICTION AND VENUE</u>

1.      This Court has jurisdiction over the subject matter of this action and over the Parties pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367; Section 113(b) of CAA, 42 U.S.C. § 7413(b); Section 3008(a)(l) of RCRA, 42 U.S.C. § 6928(a)(l); and Section 309(b) and 311(n) of CWA, 33 U.S.C. §§ 1319(b) and 1321(n). Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in, and DuPont conducts business in, this judicial district. This venue is also consistent with Section 113(b) of CAA, 42 U.S.C. § 7413(b); Section 3008(a) of RCRA, 42 U.S.C. § 6928(a); and Section 309 of CWA, 33 U.S.C. § 1319.

2.      For purposes of this Consent Decree, or any action to enforce this Consent Decree, DuPont consents to the Court's jurisdiction over this Consent Decree and any such action and over DuPont, and DuPont consents to venue in this judicial district.

3.      For purposes of this Consent Decree, DuPont agrees that the Complaint states claims upon which relief may be granted pursuant to Section 113 of CAA, 42 U.S.C. § 7413; Sections  3004, 3005 and 3008 of RCRA, 42 U.S.C. §§ 6924, 6925 and 6928; Sections 309 and 311 of CWA, 33 U.S.C. §§ 1319 and 1321; Section 382.085 of the TCAA, Tex. Health & Safety Code § 382.085; Sections 7.101 and 26.121 of the TWC, Tex. Water Code §§ 7.101 and 26.121; and applicable state and federal regulations.

## II. **APPLICABILITY**

4.      The obligations of this Consent Decree apply to and are binding upon the United States, the State, and upon DuPont and any successors, assigns, or other entities or persons otherwise bound by law.

5.      At least thirty 30 Days prior to any proposed transfer of ownership or operation of the assets comprising DuPont's Facility ("Transfer"), or within such shorter time as the United States and the State may agree to in writing, DuPont shall provide a copy of this Consent Decree to the proposed transferee and shall provide written notice of the prospective Transfer, together with a copy of the relevant portions of the proposed Transfer agreement, to the United States and the State in writing, in accordance with Section XV (Notices).  No Transfer, whether in compliance with the procedures of this Paragraph or otherwise, relieves DuPont of its obligation to ensure that the terms of this Decree are implemented, unless (i) the transferee agrees to undertake the obligations of this Consent Decree and to be substituted for DuPont as a Party under this Decree and thus bound by the terms hereof, (ii) the United States and the State consent to relieve DuPont of its obligations or this Court orders such substitution over the objection of the Plaintiffs through the process set forth in Paragraph 7, and (iii) the Court modifies this Consent Decree and the transferee becomes a Party to this Consent Decree.

6.      After the submission to the United States and the State of the notice of the proposed Transfer, as required by Paragraph 5, DuPont may request the Plaintiffs' consent to file a joint motion requesting the Court to approve a modification substituting the transferee for DuPont as the Defendant responsible for complying with all or some of the obligations of the Consent Decree.  Plaintiffs may consent to such a filing or the United States shall notify DuPont, after consultation with the State, that Plaintiffs do not agree to modify the Consent Decree to

make the transferee responsible for complying with the obligations of the Consent Decree, as requested.

7.      If, for any reason, DuPont does not secure the agreement of Plaintiffs to file a joint motion within 30 Days after requesting the Plaintiffs' consent to file a joint motion under Paragraph 6, DuPont and the transferee may file, without the agreement of the United States or the State, a motion requesting the Court to approve a modification substituting the transferee for DuPont as the Party responsible for complying with some or all of the obligations of the Consent Decree.  The United States or the State may file an opposition to the motion objecting to the Transfer (a) because EPA or TCEQ has determined that the transferee lacks the financial or technical ability to assume the obligations of the Decree; (b) because the proposed modification fails to effectively transfer all of the Consent Decree's obligations to the transferee; or (c) for any other good cause.  The motion to modify the Decree shall be granted unless: (i) DuPont and the transferee fail to show that the transferee has the financial and technical ability to assume the obligations of the Decree, as requested; (ii) DuPont and the transferee fail to show that the modification language effectively transfers such obligations to the transferee; or (iii) the Court finds other good cause for denying the motion.

8.      DuPont shall provide a copy of relevant portions of this Consent Decree to all officers, employees, and agents that are responsible for compliance with any provision of this Decree, as well as to any vendor, supplier, or contractor retained to perform work required under this Consent Decree. DuPont shall condition any such contract upon such performance of the work in conformity with the terms of this Consent Decree. A contractor's failure to perform the work in conformity with the terms of this Decree shall not excuse DuPont's obligations under this Decree.

9.     In any action to enforce this Consent Decree, DuPont shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.  DEFINITIONS

10.     Terms used in this Consent Decree, including the Appendices hereto, that are defined in the CAA, RCRA, CWA, TCAA, TSWDA, TWC, or in federal and state regulations promulgated thereunder, shall have the meanings assigned to them in the applicable statute or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "Complaint" shall mean the complaint filed by the United States and the State in this action;

b.     "Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto listed in Section XXIV (Appendices);

c.     "Date of Lodging" shall mean the date on which the United States initially lodges the Consent Decree with the Court prior to commencement of the public comment period required by Section XX (Public Participation) of this Consent Decree;

d.     "Day" or "day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State of Texas holiday, the period shall run until the close of business of the next business day;

e.     "Defendant" or "DuPont" shall mean E.I. du Pont de Nemours and Company;

f.     "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

g.   "Effective Date" shall have the definition provided in Section XVI (Effective Date);

h.   "Facility" shall mean portions of the manufacturing plant located at 12501 Strang Road, La Porte, Harris County, Texas, owned or operated by DuPont (or its contractors), including operating and closed units or equipment, but excluding units or equipment owned or operated by any tenant, including but not limited to, The LYCRA Company, LLC, The Chemours Company FC, LLC, and Kuraray America, Inc.;

i.   "Month" or "monthly" shall mean a calendar month;

j.   "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

k.   "Parties" shall mean the United States of America, the State of Texas, and DuPont;

l.   "Plaintiff(s)" shall mean the United States of America and the State of Texas;

m.   "Section" shall mean a portion of this Decree identified by a roman numeral;

n.   "TCEQ" shall mean the Texas Commission on Environmental Quality, an agency of the State of Texas, or any successor departments or agencies of TCEQ;

o.   "Texas" or "the State" shall mean the State of Texas, acting on behalf of the TCEQ;

p.   "United States" shall mean the United States of America, acting on behalf of EPA.

## IV.  INJUNCTIVE RELIEF REQUIREMENTS FOR COMPLIANCE

11.   <u>Polyether Polyols Production MACT</u>. DuPont shall undertake the measures set forth in Appendix A of this Consent Decree relating to the Polyether Polyols Production MACT standards set forth in 40 C.F.R. Part 63, Subpart PPP ("PPP MACT"), at the Facility.

12. <u>Clean Water Act Requirements</u>. DuPont shall undertake the measures set forth in Appendix B of this Consent Decree relating to the CWA and State law at the Facility.

13. <u>Resource Conservation and Recovery Act Requirements</u>. DuPont shall undertake the measures set forth in Appendix C of this Consent Decree relating to the RCRA and State law at the Facility.

## V. <u>APPROVAL OF DELIVERABLES</u>

14. DuPont shall submit each plan, report, or other submission required by this Consent Decree to Plaintiffs whenever and in the manner such a document is required to be submitted for review or approval pursuant to this Consent Decree. Except as provided otherwise in Appendix C (RCRA), EPA shall be the approving agency for deliverables under this Decree. Upon review, EPA, after consultation with TCEQ (or the reverse as provided in Appendix C), shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

15. If the submission is approved pursuant to Paragraph 14, DuPont shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part pursuant to Paragraph 14(b) or (c), DuPont shall, upon written direction from EPA, after consultation with TCEQ (or the reverse as provided in Appendix C), take all actions required by the approved plan, report, or other item that EPA, after consultation with TCEQ (or the reverse as provided in Appendix C), determines are technically severable from any disapproved portions, subject to DuPont's right to dispute only the specified conditions or the disapproved portions, under Section XI (Dispute Resolution).

16.     If the submission is disapproved in whole or in part pursuant to Paragraph 14(c) or (d), DuPont shall, within sixty (60) days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, DuPont shall proceed in accordance with the preceding Paragraph.

17.     Any stipulated penalties applicable to the original submission, as provided in Section IX, shall accrue during the sixty (60) day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of DuPont's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

18.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA, after consultation with TCEQ (or the reverse as provided in Appendix C), may again require DuPont to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself/themselves correct any deficiencies, subject to DuPont's right to invoke Dispute Resolution under Section XI and the right of the United States and the State to seek stipulated penalties as provided in the preceding Paragraphs and Section IX.

## VI.  PERMITS

19.     In any instance where otherwise applicable law or this Consent Decree requires DuPont to secure a federal, state or local permit to authorize construction or operation of any device, including all preconstruction, construction, and operating permits required under state or local law, DuPont shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

20.     When permits are required under this Consent Decree, DuPont shall complete and submit applications for such permits to the appropriate authorities to allow sufficient time for all legally required processing and review of the permit request, including requests for additional information by the permitting authorities. DuPont may seek relief under the provisions of Section X (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if DuPont has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals. Any failure by DuPont to submit a timely permit application shall bar any use by DuPont of Section X (Force Majeure) of this Consent Decree, where a Force Majeure claim is based on that permit delay.

## VII.  CIVIL PENALTY

21.     Within thirty (30) Days after the Effective Date of this Consent Decree, DuPont shall pay a civil penalty to the United States and to the State, as provided below.  Failure to timely pay the civil penalty required herein shall render DuPont liable for all charges, costs, fees, and penalties established by law for the benefit of a creditor or of the United States or the State in securing payment.

22.     Payment to the United States.  DuPont shall pay to the United States a civil penalty amount of $1,710,000.00, together with interest accruing from the Effective Date, at the rate specified in 28 U.S.C. § 1961.  If any portion of the civil penalty due to the United States is not paid when due, DuPont shall pay interest on the amount past due accruing from the Date of Lodging of the Consent Decree through the date of payment at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging. DuPont shall pay the civil penalty and any associated interest by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to DuPont by the Financial Litigation Unit ("FLU") of

U.S. & Texas v. E. I. du Pont de Nemours and Co.

the U.S. Attorney's Office for the Southern District of Texas, after the Effective Date. The

payment instructions provided by the FLU will include a Consolidated Debt Collection System

("CDCS") number, which DuPont shall use to identify all payments required to be made in

accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Patricia McGee
> Corporate Counsel
> Corteva Legal
> 974 Centre Road Bldg. 735
> Wilmington DE 19805
> patricia.mcgee@corteva.com

on behalf of DuPont. DuPont may change the individual to receive payment instructions on its

behalf by providing written notice of such change to the United States and EPA in accordance with

Section XV (Notices).

      23.      At the time of payment to the United States, DuPont shall send notice that

payment has been made, together with a copy of the EFT authorization form and the EFT

transaction record to (i) EPA by email to cinwd_acctsreceivable@epa.gov and via regular mail

to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

and (ii) to the Department of Justice via email or regular mail in accordance with Section XV

(Notices); and (iii) to EPA in accordance with Section XV (Notices). Such notice shall state that

the payment is for the civil penalty owed pursuant to the Consent Decree in *United States and

State of Texas v. E. I. du Pont de Nemours & Company*, and shall reference the civil action number,

CDCS Number, and DOJ case number 90-5-2-1-08181/3.

      24.      <u>Payment to the State</u>.  Within thirty (30) Days after the Effective Date, DuPont

shall pay the total amount of $1,710,000.00, which includes a civil penalty of $1,485,000.00 and

attorneys' fees of $225,000.00, to the State of Texas, together with interest accruing on those amounts from the Effective Date, at the rate specified in 28 U.S.C. § 1961. If any portion of the civil penalty due to the State is not paid when due, DuPont shall pay interest on the amount past due accruing from the Date of Lodging of the Consent Decree through the date of payment at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging. DuPont shall pay the civil penalty and attorneys' fees, and any associated interest, by Wire Transfer or Automated Clearing House (ACH) Transfer to the Office of the Attorney General, State of Texas, in accordance with written instructions to be provided to DuPont, following entry of the Consent Decree, by the Office of the Attorney General.

25.     At the time of the payment to the State of Texas, DuPont shall send notice that payment has been made, together with a copy of the Wire Transfer or ACH authorization form and transaction record, to the Office of the Attorney General by email to Thomas.Edwards@oag.texas.gov and Jake.Brown@oag.texas.gov, and via regular mail to the Environmental Protection Division, Office of the Attorney General, in accordance with Section XV. Such notice shall state that the payment is for the civil penalty, attorneys' fees, and interest owed pursuant to the Consent Decree in *United States and State of Texas v. E. I. du Pont de Nemours & Company*, and shall reference the civil action number and AG No. 15-3564919.

26.     DuPont shall not deduct any penalties paid under this Decree pursuant to this Section VII (Civil Penalty) in calculating its federal, State, or local income tax.

## VIII.  <u>REPORTING REQUIREMENTS</u>

27.     In addition to any other express reporting requirement in this Consent Decree, on each February 28 and August 31 following the Effective Date of this Consent Decree until termination of this Decree pursuant to Section XIX (Termination), DuPont shall submit to EPA and TCEQ a semi-annual progress report that shall describe DuPont's actions taken and to be

taken to comply with this Consent Decree. The progress report due February 28 shall provide information for the preceding period from July 1 through December 31. The progress report due August 31 shall provide information for the preceding period from January 1 through June 30. The first progress report shall provide information from the Effective Date until December 31 or June 30, whichever occurs first.  If DuPont indicates in a progress report that an obligation under this Consent Decree has been completed and EPA, in consultation with TCEQ (or the reverse as provided in Appendix C), agrees that the obligation has been completed, DuPont is not required to include the completed obligation in future progress reports. Each progress report shall include:

    a.   a description of each requirement of this Consent Decree (or any submission made thereunder) that was completed during the reporting period, including the date such requirement was completed;

    b.   all information required to be reported in the progress report under Appendices A through C of this Consent Decree (which may reference specific information previously submitted to EPA and TCEQ pursuant to this Consent Decree without re-submitting same);

    c.   a summary of the emissions data, including a separate identification of any exceedance(s) of Consent Decree emission limitations or standards for the Facility set forth or established pursuant to Sections IV-VI of this Consent Decree and Appendices A-C for that time period; and

    d.   a description of any problems anticipated with respect to meeting the requirements of Sections IV-VI of this Consent Decree, together with implemented or proposed solutions.

28.     In any periodic progress report submitted pursuant to this Section, DuPont may incorporate by reference information previously submitted under its Title V permitting requirements, provided that DuPont attaches the Title V permit report and provides a specific reference to the provisions of the Title V permit report that are responsive to the information required in the periodic progress report.

29.     If DuPont violates, or has reason to believe that it will more likely than not violate, any requirement of this Consent Decree, DuPont shall notify the United States and the State of such violation and its duration or anticipated likely duration, in writing, within fifteen (15) business Days of first becoming aware of the violation or potential violation, with an explanation of the cause or likely cause of the violation and any measures taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, DuPont shall so state in the report. DuPont shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within fifteen (15) Days of becoming aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves DuPont of its obligation to provide the notice required by Section X (Force Majeure) of this Consent Decree.

30.     Whenever any violation of this Consent Decree or any applicable permit or any other event related to DuPont's performance under this Consent Decree, or the performance of its Facility, poses an immediate threat to the public health or welfare of the environment, DuPont shall notify EPA and TCEQ orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after DuPont first knew of, or should have known of, the violation or event. This notification procedure is in addition to the requirements set forth in the preceding Paragraph.

31.     All reports shall be submitted to the persons designated in Section XV (Notices) of this Consent Decree.

32.     Each report or notice submitted by DuPont under this Section shall be signed by a responsible corporate official of DuPont and shall include the following certification:

> I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gathered, evaluated, and presented the information contained therein. I further certify, based on my personal knowledge or on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, that the information submitted is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

33.     The reporting requirements of this Consent Decree do not relieve DuPont of any additional reporting obligations required by the CAA, RCRA, CWA, TCAA, TSWDA, TWC, or their implementing regulations, or of any other federal, state, or local law, regulation, permit, or other requirement. The reporting requirements of this Section are in addition to any other reports, plans, or submissions required by other Sections of this Consent Decree.

34.     Any information provided pursuant to this Consent Decree may be used by the United States or State in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## IX.  STIPULATED PENALTIES

35.     DuPont shall be liable for stipulated penalties to the United States and to the State for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure). A violation includes failing to perform any obligation required by the terms of this

Consent Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

36.     Late Payment of Civil Penalty. If DuPont fails to pay the civil penalty required to be paid under Section VII (Civil Penalty) of this Decree when due, DuPont shall pay a stipulated penalty of $5,000 per Day for each Day that the payment is late.

37.     Compliance Requirements. The following stipulated penalties shall accrue for each violation of the requirements identified in Section IV (Injunctive Relief Requirements for Compliance) of this Consent Decree and in the Appendices:

**Polyether Polyols Production MACT (Appendix A):**

| Violation | Stipulated Penalty | |
|---|---|---|
| For each failure to take any action necessary to correct non-compliance or come into compliance as required by Appendix A, Paragraph 1 within the specified time established by or approved under this Decree | Period of noncompliance | Penalty per Day per Violation |
| | 1st – 30th day | $ 750 |
| | 31st - 60th day | $ 1,500 |
| | 61st day and beyond | $ 3,500 or an amount equal to 1.2 times the economic benefit of delayed compliance, whichever is greater |
| For failure to establish an annual review program to identify new wastewater streams as required by Appendix A, Paragraph 3 | $2,500 per month (or fraction thereof) | |
| For failure to perform laboratory audits as required by Appendix A, Paragraph 4 | $5,000 per quarter (or fraction thereof), per audit | |
| For failure to implement the training requirements as set forth in Appendix A, Paragraph 5 | $10,000 per quarter (or fraction thereof) | |
| For each failure to comply with any recordkeeping, submission, or reporting requirement in Appendix A, Paragraph 6 not specifically identified above in this Table | Period of noncompliance | Penalty per Day per Violation |
| | Days 1-30 | $ 100 |
| | Days 31-60 | $ 250 |
| | Days 61 and later | $ 500 |

U.S. & Texas v. E. I. du Pont de Nemours and Co.

**CWA (Appendix B):**

| Violation | Stipulated Penalty | |
|---|---|---|
| For each failure to comply with any of the requirements of Section IV (Injunctive Relief Requirements for Compliance), Paragraph 12, as set forth in Appendix B, within the specified time established by or approved under this Decree | Period of Noncompliance<br><br>1st – 14th day<br>15th – 30th day<br>31st day and beyond | Penalty per Day per Violation<br><br>$ 1,000<br>$ 2,500<br>$ 4,500 |

**RCRA (Appendix C):**

| Violation | Stipulated Penalty | |
|---|---|---|
| For each failure to comply with any of the requirements of Section IV (Injunctive Relief Requirements for Compliance), Paragraph 13, as set forth in Appendix C within the specified time established by or approved under this Decree | Period of Noncompliance<br><br>1st – 14th day<br>15th – 30th day<br>31st day and beyond | Penalty per Day per Violation<br><br>$ 1,000<br>$ 1,500<br>$ 2,000 |

38.     Reporting Requirements. The following stipulated penalties shall accrue per

violation per Day for each violation of the reporting requirements of Section VIII (Reporting

Requirements) of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,000 | 1st through 14th Day |
| $ 2,000 | 15th through 30th Day |
| $ 3,500 | 31st Day and beyond |

39.     Any Other Non-Compliance with the Consent Decree. The following stipulated

penalties shall accrue per violation per Day for each violation of any requirement of this Consent

Decree not otherwise enumerated above:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,000 | 1st through 14th Day |
| $ 2,500 | 15th through 30th Day |
| $ 4,500 | 31st Day and beyond |

40.     Stipulated penalties under this Section shall begin to accrue on the Day after

performance is due or on the Day a violation occurs, whichever is applicable, and shall continue

U.S. & Texas v. E. I. du Pont de Nemours and Co.

to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of the Consent Decree.

41.     DuPont shall pay any stipulated penalty within thirty (30) Days of receiving the United States' or State's written demand in accordance with the procedures set forth in Section VII (Civil Penalty).

42.     The United States, or the State, or both, may seek stipulated penalties under this Section by sending a joint written demand to DuPont, or by either Plaintiff sending a written demand to DuPont, with a copy simultaneously sent to the other Plaintiff.  Where only one Plaintiff demands stipulated penalties for a violation, and the other Plaintiff does not join in the demand within 14 Days of receiving the demand, DuPont shall pay the full stipulated penalties due for that violation to the Plaintiff making the demand, and the other Plaintiff cannot later seek stipulated penalties for the same violation.  Where both Plaintiffs seek the full stipulated penalties for the same violation of this Consent Decree, Plaintiffs may thereafter, in coordination and consultation, jointly agree to waive stipulated penalties or reduce the amount of stipulated penalties sought, in their unreviewable exercise of discretion, and the final penalty amount owed shall be paid 50 percent to the United States and 50 percent to the State.

43.     Stipulated penalties shall continue to accrue as provided in Paragraph 40 during any Dispute Resolution, but need not be paid until the following:

a.   If the dispute is resolved by agreement of the Parties or by a decision of EPA or the TCEQ that is not appealed to the Court, DuPont shall pay accrued penalties determined to be owing, together with interest, to the United States or State within thirty (30) Days of the effective date of the agreement or the receipt of EPA's or the TCEQ's decision or order.

b. If the dispute is appealed to the Court and the United States or the State prevails in whole or in part, DuPont shall pay all accrued penalties determined by the Court to be owed, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph 43.c, below.

c. If any Party appeals the District Court's decision, DuPont shall pay all accrued penalties determined to be owed, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

44.    DuPont shall pay stipulated penalties owing to the United States or the State, or both, in the manner set forth and with the confirmation notices required by Paragraphs 22-25, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.  The transmittal letter shall provide enough specificity to readily ascertain the violation(s), including the dates thereof, for which the stipulated penalties are being paid.

45.    DuPont shall not deduct any penalties paid under this Decree pursuant to this Section IX (Stipulated Penalties) in calculating its federal, State, or local income tax.

46.    If DuPont fails to pay stipulated penalties according to the terms of this Consent Decree, DuPont shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing from the date payment became due. Such interest shall be paid to the United States and the State separately, based upon the stipulated penalties owed to each of them. Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for DuPont's failure to pay any stipulated penalties.

47.    <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States' or the State's exclusive remedy for violations of the Consent Decree.  Subject to the provisions of

Section XIII (Effect of Settlement/Reservation of Rights), the United States and the State expressly reserve the right to seek any other relief they deem appropriate for DuPont's violation of this Decree or applicable law, including but not limited to an administrative or judicial action against DuPont for statutory penalties, administrative penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  The issuance of a notice of violation, notice of enforcement, or other enforcement document by EPA or TCEQ does not constitute a waiver of stipulated penalties.  However, the amount of any statutory penalty or administrative penalty assessed by a Plaintiff for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed for the same violation or violations and paid pursuant to this Consent Decree.  Any reduction or waiver of stipulated penalties by either Plaintiff does not preclude either Plaintiff from pursuing other remedies as delineated in this paragraph.

## X.  FORCE MAJEURE

48.     For purposes of this Consent Decree, a "Force Majeure Event" shall mean any event arising from causes beyond the control of DuPont, its contractors, or any entity controlled by DuPont, that delays or prevents the performance of any obligation under this Consent Decree, despite DuPont's best efforts to fulfill the obligation. The requirement that DuPont use "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure Event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include DuPont's financial inability to perform any obligation under this Consent Decree.

49.     Notice of Force Majeure Events. If any event occurs or fails to occur that may delay the performance of any obligation under this Consent Decree, whether or not caused by a

Force Majeure Event, DuPont shall provide notice orally or by electronic or facsimile transmission to EPA and TCEQ within four (4) business days of when DuPont first knew that the event might cause a delay. Within seven (7) business days after DuPont's notice to EPA and TCEQ, DuPont shall provide in writing to EPA and TCEQ an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; DuPont's rationale for attributing such delay to a Force Majeure Event if it intends to assert such a claim; and a statement as to whether, in the opinion of DuPont, such event may cause or contribute to an endangerment to public health, welfare or the environment. DuPont shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude DuPont from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. DuPont shall be deemed to know of any circumstance of which DuPont, any entity controlled by DuPont, or any of DuPont's contractors, knew or should have known. EPA may, in its unreviewable discretion (after consultation with TCEQ), excuse in writing DuPont's failure to submit timely notices under this Paragraph.

50.   <u>Plaintiffs' Response</u>. If EPA, after a reasonable opportunity for review and comment by TCEQ, agrees that the delay or anticipated delay is attributable to a Force Majeure Event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure Event will be extended by EPA, after a reasonable opportunity for review and comment by TCEQ, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure Event shall not, of

U.S. & Texas v. E. I. du Pont de Nemours and Co.                    20

itself, extend the time for performance of any other obligation. EPA will notify DuPont in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure Event.

51.     If EPA, after a reasonable opportunity for review and comment by TCEQ, does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure Event, EPA will notify DuPont in writing of its decision.

52.     <u>Disagreement</u>. If DuPont elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), it shall do so no later than fifteen (15) Days after receipt of EPA's notice. In any such proceeding, DuPont shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure Event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that DuPont complied with the requirements of Paragraphs 48 and 49, above. If DuPont carries this burden, the delay at issue shall be deemed not to be a violation by DuPont of the affected obligation of this Consent Decree identified to EPA and the Court.

53.     <u>Extended Schedule</u>. As part of the resolution of any matter submitted to this Court under Section XI (Dispute Resolution) of this Consent Decree regarding a claim of Force Majeure, the United States, the State, and DuPont by agreement, or this Court by order, may in appropriate circumstances extend or modify the schedule for completion of work and/or obligations under this Consent Decree in accordance with Section XVIII (Modification) to account for the delay in the work and/or obligations that occurred as a result of any delay agreed to by the United States and the State or approved by the Court. DuPont shall be liable for stipulated penalties pursuant to Section IX (Stipulated Penalties) for its failure thereafter to

complete the work and/or obligations in accordance with the extended or modified schedule (provided that DuPont shall not be precluded from asserting that a further Force Majeure Event has caused or may cause a delay in complying with the extended or modified schedule).

## XI. DISPUTE RESOLUTION

54.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. DuPont's failure to seek resolution of a dispute under this Section shall preclude DuPont from raising any such issue as a defense to an action by the United States or the State to enforce any obligation of DuPont arising under this Decree.

55.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when DuPont sends the United States and the State a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed thirty (30) Days from the date the United States and the State receive DuPont's written Notice of Dispute, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then EPA, after consultation with TCEQ, shall provide DuPont with a written summary of its position regarding the dispute. The written position provided by EPA shall be considered binding unless DuPont invokes formal dispute resolution procedures as set forth below.

56.     Formal Dispute Resolution. DuPont shall invoke formal dispute resolution procedures, within forty-five (45) days after EPA provides DuPont with a written summary of its position regarding the dispute, by serving on the United States and the State a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not

be limited to, any factual data, analysis, or opinion supporting DuPont's position and any supporting documentation relied upon by DuPont.

57.     The United States, and the State if it elects, shall serve its Statement of Position within forty-five (45) Days of receipt of DuPont's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on DuPont, unless DuPont files a motion for judicial review of the dispute in accordance with the following Paragraph.

58.     DuPont may seek judicial review of the dispute by filing with the Court and serving, in accordance with Section XV (Notices), on the Plaintiffs a motion requesting judicial resolution of the dispute. The motion must be filed within forty-five (45) days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of DuPont's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree. The United States and/or the State may respond to DuPont's petition within the period allowed under the Local Rules of Court. DuPont may file a reply memorandum if permitted by the Local Rules.

59.     <u>Standard of Review</u>. Except as otherwise provided in this Decree, in any dispute brought under Paragraph 58 of this Consent Decree, DuPont shall bear the burden of proving that its actions were in compliance with this Consent Decree; or, if the dispute concerns the interpretation of this Consent Decree, DuPont shall bear the burden of demonstrating that its interpretation should prevail under applicable principles of law. The United States reserves the

right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law. The Parties agree that any rules of construction to the effect that ambiguity is construed against the drafting party shall be inapplicable.

60.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of DuPont under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 43. If DuPont does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII.  INFORMATION COLLECTION AND RETENTION

61.     The United States, the State, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, for any purpose in connection with this Consent Decree, at all reasonable times, upon presentation of agency or other authorized credentials, to:

  a.   monitor the progress of activities required under this Consent Decree;

  b.   verify any data or information submitted to the United States or the State in accordance with the terms of this Consent Decree;

  c.   obtain samples or other monitoring data and, upon request, splits of any samples taken by DuPont or its representatives, contractors, or consultants relevant to compliance with this Consent Decree;

  d.   obtain documentary evidence, including photographs and similar data relevant to compliance with this Consent Decree; and

e.    assess DuPont's compliance with this Consent Decree.

62.    Upon request, DuPont shall provide EPA and TCEQ, or their authorized representatives, splits of any samples taken by DuPont pursuant to this Consent Decree. Upon request, EPA and TCEQ shall provide DuPont splits of any samples taken by EPA or TCEQ pursuant to this Consent Decree.

63.    Until three years after the termination of this Consent Decree, DuPont shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, that relate to DuPont's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the State, DuPont shall provide copies of any documents, records, or other information required to be retained under this Paragraph.

64.    At the conclusion of the information-retention period provided in the preceding Paragraph, DuPont shall notify the United States and the State at least ninety (90) Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, DuPont shall deliver any such documents, records, or other information to EPA or TCEQ. DuPont may assert that certain documents, records, or other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If DuPont asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document,

record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by DuPont. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

65.     All documents submitted to the United States or the State by DuPont pursuant to this Consent Decree shall be subject to applicable law providing for the public disclosure of governmental records. DuPont may assert that information required to be provided under this Section is protected as Confidential Business Information (CBI) under 40 C.F.R. Part 2, or as an exception under the Texas Public Information Act, Tex. Gov't Code ch. 552, including trade secrets under Tex. Gov't Code § 552.110 and privacy or property information under Tex. Gov't Code § 552.305. As to any information that DuPont seeks to protect as CBI, DuPont shall follow the procedures set forth in 40 C.F.R. Part 2.

66.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulation, or permits, nor does it limit or affect any duty or obligation of DuPont to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

67.     This Consent Decree resolves the civil claims of the Plaintiffs for the violations alleged in the Complaint filed in this action through the Date of Lodging of this Consent Decree.

68.     This resolution of the Plaintiffs' civil claims set forth in the Complaint is expressly conditioned upon complete and satisfactory performance of the requirements set forth in this Consent Decree, including the Appendices hereto. The Plaintiffs reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent

Decree shall not be construed to limit the rights of the Plaintiffs to obtain penalties or injunctive relief under the CAA, RCRA, CWA, or their implementing regulations, or under other federal or State laws, regulations, or permit conditions, except those claims expressly specified in Paragraph 67. The Plaintiffs further retain all authority and reserve all rights to take any and all actions authorized by law to protect human health and the environment, including all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, DuPont's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

69.     In any subsequent administrative or judicial proceeding initiated by the Plaintiffs for injunctive relief, civil penalties, or other appropriate relief relating to the Facility subject to this Consent Decree or DuPont's violations, DuPont shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 67 of this Section.

70.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. DuPont is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and DuPont's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such law, regulation, or permit, except as set forth herein. The Plaintiffs do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that DuPont's compliance with any aspect of this Consent Decree will result in

U.S. & Texas v. E. I. du Pont de Nemours and Co.

compliance with provisions of the CAA, RCRA, or CWA, or with any other provisions of federal, State, or local laws, regulations, or permits.

71.     This Consent Decree does not limit or affect the rights of DuPont or of the Plaintiffs against any third parties not a Party to this Consent Decree, nor does it limit the rights of third parties not a Party to this Consent Decree, against DuPont, except as otherwise provided by law.

72.     This Consent Decree shall not be construed to create rights or obligations in, or grant any cause of action to, any third party not a Party to this Consent Decree.

## XIV.  <u>COSTS</u>

73.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the State shall recover its attorneys' fees as provided in paragraph 24, above, and the Plaintiffs shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by DuPont.

## XV.  <u>NOTICES</u>

74.     Unless otherwise specified in this Consent Decree, whenever notifications, submissions, or communications are required by this Decree, they shall be made electronically or by certified mail, unless otherwise requested, and addressed as set forth below.  Notices to TCEQ shall be sent to TCEQ only, but notices to the State shall be sent to TCEQ and the Attorney General.

**To the United States:**

by email:

eescdcopy.enrd@usdoj.gov
Re: DJ # 90-5-2-1-08181/3 (La Porte Texas Facility)

by mail:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C. 20044-7611
Re: DJ No. 90-5-2-1-08181/3

and to EPA as provided below:

**To EPA:**

By mail:

Director, Waste Chemical Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Enforcement Protection Agency
1200 Pennsylvania, N.W.
Mail Code 2249A
William Jefferson Clinton Building South
Washington, D.C. 20460

and electronic copy to:

stephanos.ann@epa.gov
raack.pete@epa.gov

and for submissions under Appendix C (RCRA), also to Region 6:

Laurie King, Chief
RCRA Corrective Action Section (6LCR-RC)
Land, Chemical & Redevelopment Division
U.S. Environmental Protection Agency, Region 6
1201 Elm Street, Suite 500
Dallas, TX  75270-2102
king.laurie@epa.gov

U.S. & Texas v. E. I. du Pont de Nemours and Co.

**To the State:**

Environmental Protection Division
(Attn: Jake Brown)
Office of the Attorney General (MC-066)
P.O. Box 12548
Austin TX  78711-2548

Or delivered to:
Wm. P. Clements State Office Bldg.
300 W. 15th St., Fl. 10
Austin TX  78701-1649

**To the TCEQ:**

Director
Litigation Division, MC 175
Texas Commission on Environmental Quality
P.O. Box 13087
Austin, TX 78711-3087

Order Compliance Team
Enforcement Division, MC 149A
Texas Commission on Environmental Quality
P.O. Box 13087
Austin, TX 78711-3087

and electronic copy to:

clayton.smith@tceq.texas.gov
james.sallans@tceq.texas.gov

and for submissions under Appendix C (RCRA), also to:

VCP/CA Section
Remediation Division, MC 127
(Attn: Maureen Hatfield)
Texas Commission on Environmental Quality
P.O. Box 13087
Austin, TX 78711-3087

**To DuPont:**

Patricia McGee
Corporate Counsel
Corteva Legal
974 Centre Road Bldg. 735

U.S. & Texas v. E. I. du Pont de Nemours and Co.

Wilmington DE 19805
patricia.mcgee@corteva.com

75.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above. Unless otherwise provided in this Consent Decree or by mutual agreement of the Parties, written notices submitted pursuant to this Section shall be deemed submitted upon mailing, or upon written acknowledgment of receipt of transmission for electronic submissions. If the due date for a submission falls on a Saturday, Sunday, or federal or State of Texas legal holiday, the submission will be deemed timely if it is submitted by the next business day. All notifications, communications, and submissions made by electronic means shall be certified and electronically signed.

## XVI.  EFFECTIVE DATE

76.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that DuPont hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States or the State withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVII.  RETENTION OF JURISDICTION

77.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of (i) resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XI (Dispute Resolution) and XVIII (Modification), or (ii) effectuating or enforcing compliance with the terms of this Decree.

## XVIII.  <u>MODIFICATION</u>

78.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court. Non-material changes to the Decree shall include, but are not limited to, schedule changes of six months or less, or resulting from force majeure.

79.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section XI of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 59, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX.  <u>TERMINATION</u>

80.     <u>Termination: Conditions Precedent</u>. Prior to termination, DuPont must have completed all of the following requirements of this Consent Decree:

      a.     Payment of all civil penalties, stipulated penalties and other monetary obligations; and

      b.     Satisfactory compliance with all provisions of Section IV of this Decree and related Appendices.

81.     At such time as DuPont believes that it has satisfied the conditions for termination set forth in Paragraph 80, DuPont may submit a request for termination to the Plaintiffs by certifying such compliance in accordance with the certification language in Paragraph 32. In the Request for Termination, DuPont must demonstrate that it has satisfied the conditions for termination set forth in Paragraph 80. The Request for Termination shall include all necessary supporting documentation.

U.S. & Texas v. E. I. du Pont de Nemours and Co.

82.     Following receipt by the United States of DuPont's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether DuPont has satisfactorily complied with the requirements for termination of this Consent Decree. If the Plaintiffs agree that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

83.     If the Plaintiffs do not agree that the Decree may be terminated, DuPont may invoke Dispute Resolution under Section XI (Dispute Resolution) of this Decree. However, DuPont shall not seek Dispute Resolution of any dispute regarding termination, under Section XI (Dispute Resolution) of this Decree, until sixty (60) Days after service of its Request for Termination.

## XX.  PUBLIC PARTICIPATION

84.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7 and Tex. Water Code § 7.110.  The United States and the State each reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. DuPont consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified DuPont in writing that it no longer supports entry of the Decree.

## XXI.  SIGNATORIES/SERVICE

85.     Each undersigned representative of DuPont, the State of Texas, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of

U.S. & Texas v. E. I. du Pont de Nemours and Co.

Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

86.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. DuPont agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. DuPont need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Decree.

## XXII.  INTEGRATION

87.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXIII.  FINAL JUDGMENT

88.      Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State of Texas, and DuPont.

## XXIV.  APPENDICES

89.     The following appendices are attached to and part of this Consent Decree and contain compliance requirements. In the event of any conflict between the text of this Consent Decree and any Appendix, the text of this Consent Decree shall control:

Appendix A (PPP MACT Requirements);
Appendix B (CWA Requirements); and
Appendix C (RCRA Requirements)

## XXV.   26 U.S.C. § 162(f)(2)(A)(ii) IDENTIFICATION

90.     For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the

Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section II (Applicability),

Paragraph 8, Section IV (Injunctive Relief Requirements for Compliance), Paragraphs 11-13 and

related Appendices A, B and C; Section V (Approval of Deliverables), Paragraphs 14-15;

Section VI (Permits), Paragraphs 19-20; Section VIII (Reporting Requirements), Paragraphs 27-

29, 31-32; and Section XII (Information Collection and Retention), Paragraphs 61-64; is

restitution or required to come into compliance with law.


Dated and entered this  22nd   day of   September      ,  2020  .




_____
**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**

FOR PLAINTIFF UNITED STATES OF AMERICA:

KAREN DWORKIN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC  20530

Date: 6/25/2020

KENNETH G. LONG
Senior Trial Attorney
D.C. Bar No. 414791
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Tel. (202) 514-2840
Fax (202) 616-6584
Email: kenneth.long@usdoj.gov

ATTORNEY-IN-CHARGE

RYAN K. PATRICK
United States Attorney
Southern District of Texas


 /s/ Andrew A. Bobb
ANDREW A. BOBB
Assistant United States Attorney
SBOT No. 02530350 / Fed Bar # 9041
1000 Louisiana, Suite #2300
Houston, Texas 77002
Telephone: 713 567-9766
Facsimile:  713 718-3303


ATTORNEYS FOR THE
UNITED STATES OF AMERICA

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


Date:   7/9/2020

SUSAN BODINE
Digitally signed by SUSAN BODINE
Date: 2020.07.09 09:00:51 -04'00'

SUSAN PARKER BODINE
Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency


Date:   7/6/2020

*Ann Stephanos*

ANN STEPHANOS
Attorney-Advisor
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

FOR PLAINTIFF THE STATE OF TEXAS,
ON BEHALF OF THE TEXAS COMMISSION
ON ENVIRONMENTAL QUALITY:

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

PRISCILLA M. HUBENAK
Chief, Environmental Protection Division

Date: 9-15-2020

Thomas H. Edwards
Assistant Attorney General
Tex. Bar No. 06461800
S.D. Tex. No. 152099
Thomas.Edwards@oag.texas.gov

Jake K. Brown
Assistant Attorney General
Tex. Bar No. 24084234
S.D. Tex. No. 3470594
Jake.Brown@oag.texas.gov
Office of the Attorney General
Environmental Protection Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

ATTORNEYS FOR THE STATE OF TEXAS

U.S. & Texas v. E. I. du Pont de Nemours and Co.

FOR DEFENDANT E.I. DU PONT DE NEMOURS AND COMPANY:

Date: _June 8, 2020_

Thomas Lewis
Corteva, EHS&S Director

FINAL DRAFT 3/16/2020

## <u>APPENDIX A</u>

**PPP MACT**
**La Porte Facility**

1. <u>Equalization Basin</u>. By no later than ninety (90) days after the Effective Date, DuPont shall either (a) prepare and submit to EPA and TCEQ a written report demonstrating that the Equalization Basin meets the definition of an "enhanced biological treatment system or enhanced biological treatment process" as provided at 40 C.F.R. Part 63, Appendix C, ("I. Purpose" and "Reference 7: Technical Support Document for Evaluation of Thoroughly Mixed Biological Treatment Units. November 1998") or (b) conduct and submit the results of a performance test evaluation as set forth in 40 C.F.R. § 63.145, as revised by 40 C.F.R. 63.1433, that demonstrates that the Equalization Basin manages wastewaters consistent with PPP MACT wastewater requirements.  If within 90 days from the Effective Date, DuPont is unable to demonstrate that the Equalization Basin meets the definition of an "enhanced biological treatment system or enhanced biological treatment process" and a performance test evaluation does not demonstrate that the Equalization Basin manages wastewaters consistent with PPP MACT wastewater requirements, then DuPont shall, within thirty (30) days thereafter, submit a proposal for corrective action to EPA for review and approval, in consultation with the TCEQ. DuPont shall complete the corrective action in accordance with a plan and schedule approved by EPA.

2. <u>Certification of Compliance</u>. By no later than thirty (30) days after demonstration of compliance with Subpart PPP under Paragraph 1, or after completion of all corrective actions, if any, required pursuant to Paragraph 1, DuPont shall submit a report to EPA and TCEQ certifying that the Facility is in compliance with the wastewater requirements of Subpart PPP.

3. <u>Annual review</u>. By no later than ninety (90) days after the Effective Date, DuPont shall commence conducting annual reviews of process wastewater information for the Facility to ensure that all new wastewater streams are included in the waste stream inventory and that all applicable requirements of Subpart PPP applicable to DuPont's operations at the Facility are met.

4. <u>Laboratory Audits</u>. DuPont shall conduct audits of all laboratories that perform wastewater analyses of the Facility's wastewater treatment system samples to ensure that proper analytical and quality assurance/quality control procedures are followed for such samples.

   a. Within one hundred-eighty (180) days after the Effective Date, DuPont shall complete initial audits of one-half of the laboratories that perform wastewater analyses for the Facility; it shall complete audits for the remaining laboratories within one (1) year of Effective Date. DuPont shall also audit any new laboratory to be used for analyses of samples from the Facility prior to use of the new laboratory. If DuPont has completed an audit of any laboratory within six (6)

FINAL DRAFT 3/16/2020

months prior to the Effective Date, initial audits of those laboratories pursuant to this Subparagraph 4.a. shall not be required.

b.   During the term of this Consent Decree, DuPont shall conduct subsequent laboratory audits such that each laboratory that DuPont uses is audited once every two (2) calendar years.

c.   DuPont may conduct audits itself, retain third parties to conduct these audits, or use audits conducted by others as its own, but the responsibility and obligation to ensure compliance with this Consent Decree are solely DuPont's.

5.   <u>Training</u>.

a.   By no later than sixty (60) days after the Effective Date, DuPont shall modify, to the extent necessary, and begin implementing its training program to include an annual training for all employees who draw wastewater samples for PPP MACT compliance purposes.

b.   DuPont shall require any contractor hired to perform requirements of this Paragraph to provide evidence that its employees are properly trained to perform those requirements.

6.   <u>Recordkeeping and Reporting Requirements for this Appendix:</u>  At the times specified below or in Paragraphs 1 and 2 above, DuPont shall submit, as and to the extent required, the following information to EPA and TCEQ:

a.   The Equalization Basin demonstration and proposal for corrective action (under Paragraph 1);

b.   Certification of Compliance (under Paragraph 2); and

c.   Semi-annual progress reports required under Section VIII of the Consent Decree shall identify all laboratory audits completed under Paragraph 4 during the prior six (6) month period, including a description of methods used in the audit and the results of the audit, and shall include a description of measures taken during the prior six (6) month period to comply with the training provisions of Paragraph 5.

U.S. & Texas v. E. I. du Pont de Nemours and Co.: La Porte

FINAL DRAFT 3/16/2020

## APPENDIX B

## CLEAN WATER ACT

1. <u>SPCC Compliance Verification</u>.

   a. <u>Secondary Containment</u>.

      i. By no later than sixty (60) days after the Effective Date, DuPont shall certify that it is compliant with the secondary containment requirements set forth in 40 C.F.R. § 112.7(c), for the diesel storage tank located on an elevated metal platform next to a clear water tank in the Coastal Industrial Water Authority Plant area.

      ii. By no later than sixty (60) days after the Effective Date, to the extent DuPont owns and/or operates oil-containing transformers at the Facility, DuPont shall demonstrate adequate secondary containment for the transformers, as required by 40 C.F.R. § 112.7(c), or demonstrate that such equipment is eligible for and in compliance with the alternative requirements pursuant to 40 C.F.R. § 112.7(k).

   b. <u>SPCC Plan Deficiencies</u>. By no later than sixty (60) days after the Effective Date, DuPont shall complete its review and revision and/or correction of the  Facility's Spill Prevention, Control and Countermeasure Plan ("SPCC Plan") to ensure that it includes the following:

      i. A detailed description of the physical layout of the Facility, including a clear and legible facility diagram, that meets the requirements of 40 C.F.R. § 112.7(a)(3);

      ii. An identification of secondary containment for the diesel storage tank located on an elevated metal platform next to a clear water tank in the Coastal Industrial Water Authority Plant area;

      iii. An identification of secondary containment for all oil-containing transformers, or a demonstration of compliance with the alternative requirements to general secondary containment contained in 40 C.F.R. § 112.7(k)(2);

      iv. A form that provides all the required information and procedures needed for a person to report a discharge, as set forth in 40 C.F.R. § 112.7(a)(4);

      v. Written procedures and documentation of the inspections and tests required by 40 C.F.R. Part 112, as provided by 40 C.F.R. § 112.7(e); and

      vi. Adequate training procedures, including an identification of a designated person at the Facility who is accountable for discharge prevention, as required by 40 C.F.R. § 112.7(f).

c.  <u>Reporting Requirements</u>.  DuPont shall submit the following information in the first Progress Report required pursuant to Section VIII (Reporting Requirements):

    i.  DuPont shall summarize the actions that have been taken at the  Facility under Paragraphs 1.a. and 1.b of this Appendix; and

    ii.  DuPont shall provide the revised and/or corrected current SPCC Plan for the Facility to demonstrate compliance with Paragraph 1.b. of this Appendix.

Final 5 19 2020

**APPENDIX C**

**RCRA REQUIREMENTS**

1.    <u>RCRA Waste Management Plan</u>.

DuPont shall perform the activities set out below to ensure that all RCRA hazardous waste streams managed by DuPont at the Facility are properly identified and documented as required pursuant to 40 C.F.R. Part 262 and 30 Tex. Admin. Code Chapter 335.

a.    DuPont shall develop a RCRA Waste Management Plan ("RWMP") setting forth procedures for identifying and characterizing all solid waste (as defined in 40 C.F.R. Part 261 and 30 Tex. Admin. Code Chapter 335) streams at the Facility. The RWMP for the Facility shall include, as attachments, the following:

i.    Documentation of all hazardous waste determinations for all solid waste streams generated at or received by the Facility (including solid waste streams from The LYCRA Company, LLC or any tenant operator such as The Chemours Company FC, LLC and Kuraray America, Inc.) that are discharged to the ditches or surface impoundments at the Facility in accordance with 40 C.F.R. Part 262 and 30 Tex. Admin. Code Chapter 335. Such hazardous waste determinations shall:

1.    Identify and characterize the solid waste streams generated at or received by the Facility at the point of generation or receipt, including identification of the hazardous waste code numbers (for example, D001, D002) that apply to the solid waste streams, or the basis for non-hazardous waste determinations;

2.    Identify whether the hazardous waste determination was made using analytical data or process knowledge for each individual solid waste stream; and

3.    Be updated when there is a process change that materially changes existing solid waste streams or when new solid waste streams are generated or received at the Facility.

ii.    A summary identifying all solid waste streams that are discharged to the ditches or surface impoundments. The summary shall identify the solid waste streams, their waste classification, where they are generated or received, how they are managed, and where they enter the ditches or surface

impoundments. The summary shall be maintained and updated as an appendix to the RWMP.

    iii.    For any solid waste streams not included in the RWMP under 1.a.i. above, the RWMP shall identify where at the Facility the documentation is kept relating to the waste determinations for those solid waste streams.

b.    Within ninety (90) days after the Effective Date, DuPont shall submit the proposed RWMP (without attachments) to TCEQ and EPA for review and comment prior to implementing the processes and procedures set forth therein. Within sixty (60) days after the date DuPont receives comments from TCEQ and EPA (or notice that no comments will be sent), DuPont shall complete revisions to and commence implementation of the RWMP and shall attach documentation of all initial hazardous waste determinations at the Facility required by Paragraph 1.a.i. Within thirty (30) days after commencement of implementation of the RWMP, DuPont shall certify to EPA and TCEQ that the RWMP has been fully implemented and that DuPont is in full compliance with the RWMP or, if not fully implemented, DuPont shall certify what portions of the RWMP have been implemented, identify which portions of the RWMP have not been implemented and submit a schedule for completing implementation of the RWMP as soon as practicable. Thereafter, DuPont shall certify to EPA and TCEQ when the RWMP is fully implemented. DuPont's certification shall include a copy of the summary (identified above) set forth as an appendix to the RWMP identifying all solid waste streams that are discharged to the ditches or surface impoundments.

c.    An up-to-date version of the RWMP shall be maintained at the Facility so that it is readily accessible to plant personnel and agency representatives upon request.

d.    Upon certification to EPA and TCEQ that water treatment and conveyance units have been converted to piping and tank-based treatment units, with no ditches or surface impoundments utilized for ongoing waste management activities, DuPont may request modification of the RWMP, or request that it no longer be required to be implemented, with respect to the converted units.

2.    <u>Unit-Specific Requirements</u>.

a.    As of the Effective Date, DuPont shall ensure there are no discharges of hazardous wastes into surface impoundments, including the Clean Water Ditch, the Equalization Basin ("EQB"), North Aeration Basin ("NAB"), South Aeration Basin ("SAB"), and Emergency Retention Basin ("ERB").

b.    <u>Emergency Retention Basin (ERB) - Sediments and Soil</u>. Within ninety (90) days after the Effective Date, DuPont shall submit to TCEQ for review and approval, in consultation with EPA, an ERB investigation plan to provide a representative examination of sediments within the ERB and potentially soils below the ERB for the presence of constituents of concern ("COCs"). The investigation of sediments

within the ERB shall involve sampling and analysis for the presence of COCs that are listed in Appendix VIII of 40 C.F.R. Part 261 and Appendix IX of 40 C.F.R. Part 264. If any COCs are detected in sediments at concentrations above the "Sediment Assessment Level," which shall be the highest of either the (i) lowest critical Texas Risk Reduction Program ("TRRP") sediment Protective Concentration Levels ("PCLs") or Tier 1 residential soil PCLs (assuming 0.5-acre source area and Class 1 groundwater), (ii) background concentration, or (iii) method quantitation limit ("MQL"), then the investigation shall be extended to the soils below the ERB for those COCs. DuPont shall collect a sufficient number of samples to reliably characterize the nature and degree of COCs in the sediments within the ERB and potentially soils below the ERB, as well as the horizontal and vertical extent of COCs. The ERB investigation plan shall also include a schedule for submitting an affected property assessment report ("APAR"), as detailed in Paragraph 2.d., below. DuPont shall complete the investigation in accordance with a schedule in the ERB investigation plan approved by the TCEQ.

c.  <u>ERB – Groundwater</u>. If the investigation set forth in Paragraph 2.b. determines that there are COCs in soils below the ERB that are above the Soil Assessment Level (as defined below), then within ninety (90) days of such determination, DuPont shall submit a revised ERB investigation plan (or new groundwater investigation plan) to TCEQ for review and approval, in consultation with EPA, to extend the investigation for those COCs to the groundwater below and, to the extent necessary, downgradient of the ERB. The "Soil Assessment Level" shall be the highest of either the (i) lowest critical TRRP Tier 1 residential soil PCLs (assuming 0.5-acre source area and Class 1 groundwater), (ii) background concentration, or (iii) MQL. Tier 2 or 3 $^{GW}Soil_{Ing}$ PCLs may be developed for any COCs exceeding the Tier 1 $^{GW}Soil_{Ing}$ PCLs or background concentrations. The development of Tier 2 or 3 $^{GW}Soil_{Ing}$ PCLs shall require pre-approval by the TCEQ before use. DuPont shall complete the extended investigation in accordance with a schedule in the revised ERB investigation plan (or new groundwater investigation plan) approved by the TCEQ.

d.  <u>ERB – APAR</u>. Upon completion of the investigations as specified in Paragraphs 2.b. and 2.c., DuPont shall submit an APAR, using Form TCEQ-10325 or current applicable form, documenting the ERB investigation results, to TCEQ for review and approval in consultation with EPA. The APAR shall be submitted within the time frame established in the approved schedule included in the ERB investigation plan. The APAR shall address the full nature and extent of the contamination, and shall include the risk assessment results, QA/QC procedures followed, Data Quality Objectives met, and a description of recommended response actions, including interim actions.

e.  <u>ERB – Response Actions</u>. If a response action plan ("RAP") is required by the TRRP rules for the ERB, then within one-hundred twenty (120) days after receipt of approval of the APAR referenced above, DuPont shall submit a RAP to TCEQ for review and approval, in consultation with EPA. The RAP shall include

necessary response actions to remove, decontaminate, and/or control any COCs at concentrations above the critical PCLs based on commercial/industrial land use or ecological or human receptors, as appropriate and in accordance with 30 Tex. Admin. Code § 350.78, that are present in the sediments within or in soils or groundwater below or downgradient of the ERB, pursuant to the TRRP, as codified at 30 Tex. Admin. Code Chapter 350, 30 Tex. Admin. Code § 335.167 and 40 C.F.R. Part 264, Subpart F. The RAP may also include a proposal for application to TCEQ for establishing a Facility Operations Area ("FOA") under the TRRP for the ERB or any portion of or all of the Facility. If the RAP includes an application for a FOA authorization, it shall comply with the application requirements of 30 Tex. Admin. Code § 350.135 and include a completed Qualifying Criteria Checklist in accordance with TCEQ Publication RG-366/TRRP-34, or current applicable form. The RAP, if it includes response action related to the sediments, shall be consistent with the following:

i.    For COCs detected in the sediments at concentrations at or above those set forth in 40 C.F.R. § 261.24, DuPont shall propose response actions in the RAP.

ii.   For COCs detected in the sediments at concentrations below those set forth in 40 C.F.R. § 261.24 but above the Sediment Assessment Level used in Paragraph 2.b., DuPont shall propose response actions in the RAP to address the source sediments if results of a risk-based analysis indicate that a response action is necessary.

DuPont shall implement the RAP as approved or modified by TCEQ and according to the schedule approved by TCEQ in consultation with EPA. DuPont shall line the ERB prior to further operational use following any necessary response or corrective action activities. Investigation, response, corrective action, and lining activities may be conducted in phases to allow operational use of portions of the ERB during these activities.

f.    Equalization Basin (EQB) – Sediments and Soils. Within ninety (90) days after the Effective Date, DuPont shall submit to TCEQ for review and approval, in consultation with EPA, an EQB investigation plan to provide a representative examination of the sediments within the EQB and potentially soils below the EQB for the presence of COCs. The investigation of sediments within the EQB shall involve sampling and analysis for the presence of COCs that are listed in Appendix VIII of 40 C.F.R. Part 261 and Appendix IX of 40 C.F.R. Part 264. If any COCs are detected in sediments at concentrations above the Sediment Assessment Level as defined in Paragraph 2.b., then the investigation shall be extended to the soils below the EQB for those COCs. DuPont shall collect a sufficient number of samples to reliably characterize the nature and extent of COCs in the sediments within the EQB and potentially soils below the EQB, as well as the horizontal and vertical extent of COCs. The EQB investigation plan

shall also include a schedule for submitting an APAR, as detailed in Paragraph 2.h. below. The EQB investigation plan may be coordinated with the ERB investigation plan. DuPont shall complete the investigation in accordance with a schedule in the EQB investigation plan approved by the TCEQ.

g.   <u>EQB – Groundwater</u>. If the investigation set forth in Paragraph 2.f. determines that there are COCs in soils below the EQB that are above the Soil Assessment Level as defined in Paragraph 2.c., then within ninety (90) days of such determination, DuPont shall submit a revised EQB investigation plan (or new groundwater investigation plan) to TCEQ for review and approval, in consultation with EPA, to extend the investigation for those COCs to the groundwater below and, to the extent necessary, downgradient of the EQB. Tier 2 or 3 $^{GW}Soil_{Ing}$ PCLs may be developed for any COCs exceeding the Tier 1 $^{GW}Soil_{Ing}$ PCLs or background concentrations. The development of Tier 2 or 3 $^{GW}Soil_{Ing}$ PCLs shall require pre-approval by the TCEQ before use.  This extended investigation for the EQB may be coordinated with investigation of the ERB.  DuPont shall complete the extended investigation in accordance with a schedule in the revised EQB investigation plan (or new groundwater investigation plan) approved by the TCEQ.

h.   <u>EQB – APAR</u>. Upon completion of the investigations as specified in Paragraphs 2.f. and 2.g., DuPont shall submit an APAR, using Form TCEQ-10325 or current applicable form, documenting the EQB investigation results to TCEQ for review and approval, in consultation with EPA. The APAR shall be submitted within the time frame established in the approved schedule included in the EQB investigation plan. The APAR shall address the full nature and extent of the contamination, and shall include the risk assessment results, QA/QC procedures followed, Data Quality Objectives met, and a description of recommended response actions, including interim actions.

i.   <u>EQB – Response Actions</u>. If a RAP is required by TRRP rules for the EQB, then within one-hundred twenty (120) days after receipt of approval of the APAR referenced above, DuPont shall submit a RAP to TCEQ for review and approval, in consultation with EPA. The RAP shall include necessary response actions to remove, decontaminate, and/or control any COCs at concentrations above the critical PCLs based on commercial/industrial land use or ecological or human receptors, as appropriate and in accordance with 30 Tex. Admin. Code § 350.78, that are present in the sediments within, or in soils or groundwater below and downgradient of, the EQB, pursuant to the TRRP as codified at 30 Tex. Admin. Code Chapter 350, 30 Tex. Admin. Code § 335.167 and 40 C.F.R. Part 264, Subpart F. The RAP may also include a proposal for application to TCEQ for establishing a FOA under the TRRP for the EQB. If the RAP includes an application for a FOA authorization, it shall comply with the application requirements of 30 Tex. Admin. Code § 350.135 and include a completed Qualifying Criteria Checklist in accordance with TCEQ Publication RG-

366/TRRP-34 or current applicable form. The RAP, if it includes action related to the sediments, shall be consistent with the following:

   i.    For COCs detected in the sediments at concentrations at or above those set forth in 40 C.F.R. § 261.24, DuPont shall propose response actions in the RAP.

   ii.   For COCs detected in the sediments at concentrations below those set forth in 40 C.F.R. § 261.24 but above the Sediment Assessment Level used in Paragraph 2.f., DuPont shall propose response actions in the RAP to address the source sediments if results of a risk-based analysis indicate that a response action is necessary.

Any RAP submitted by DuPont for response and/or corrective actions associated with the EQB may be coordinated with a RAP for response and/or corrective actions associated with the ERB. DuPont shall implement the RAP as approved or modified by TCEQ and according to the schedule approved by TCEQ, in consultation with EPA. DuPont's investigation, response, and/or corrective action activities described in Paragraphs 2.e.-2.g. may be conducted in phases for any unit to allow operational use of portions of the EQB, as necessary, during these activities.

j.   North Aeration Basin (NAB) and South Aeration Basin (SAB) – Sediments. If the investigation described above in Paragraph 2.f. determines that there are COCs at concentrations above the lowest critical TRRP Tier 1 PCLs in the sediments within the EQB, then within ninety (90) days after such determination, DuPont shall submit an NAB and SAB investigation plan(s) to provide a representative examination of sediments in the NAB and SAB for the presence of only those COCs determined to be in concentrations above the lowest critical TRRP Tier 1 PCLs in sediments of the EQB. DuPont shall collect a sufficient number of samples to reliably characterize the nature and degree of COCs in the sediments within the NAB and SAB. The NAB and SAB investigation plan(s) shall also include a schedule for submitting an APAR as detailed in Paragraph 2.m., below. DuPont shall complete the investigation(s) required in this paragraph in accordance with a schedule in the investigation plan(s) approved by the TCEQ.

k.   NAB and SAB – Soils. If any COCs are detected in sediments in the NAB and/or SAB at concentrations above the Sediment Assessment Level as defined in Paragraph 2.b., then within ninety (90) days after such determination, DuPont shall submit a revised NAB and/or SAB investigation plan (or new soil investigation plan) to the TCEQ for review and approval, in consultation with EPA, to provide a representative examination of the soil below either the NAB or the SAB, or both. The investigation of soils below either the NAB or SAB, or both, shall involve sampling and analysis only for those COCs detected in sediments in the NAB and/or SAB above the Sediment Assessment Level used

above. DuPont shall collect a sufficient number of samples to reliably characterize the nature and degree of COCs in the soils below the NAB and SAB, as well as the horizontal and vertical extent of COCs. The revised NAB and/or SAB investigation plan(s) shall also include a schedule for submitting an APAR, as detailed in Paragraph 2.m., below. DuPont shall complete the investigation(s) in accordance with a schedule in the revised NAB and/or SAB investigation plan(s) (or new soil investigation plan(s)) approved by the TCEQ.

l.   NAB and SAB – Groundwater. If the investigation set forth in Paragraph 2.k. determines that there are COCs in soils below the NAB and/or SAB that are above the Soil Assessment Level as defined in Paragraph 2.c., then within ninety (90) days of such determination, DuPont shall submit a revised NAB and SAB investigation plan(s) (or new groundwater investigation plan) to TCEQ for review and approval, in consultation with EPA, to extend the investigation for those COCs to the groundwater below and, to the extent necessary, downgradient of the NAB and/or SAB to protect human health and the environment. Tier 2 or 3 $^{GW}Soil_{Ing}$ PCLs may be developed for any COCs exceeding the Tier 1 $^{GW}Soil_{Ing}$ PCLs or background concentrations. The development of Tier 2 or 3 $^{GW}Soil_{Ing}$ PCLs shall require pre-approval by the TCEQ before use. The revised NAB and SAB investigation plan(s) (or new groundwater investigation plan(s)) shall also include a schedule for submitting an APAR, as detailed in Paragraph 2.m., below. DuPont shall complete the investigation(s) of groundwater required by this paragraph in accordance with a schedule in the revised NAB and/or SAB investigation plan(s) (or new groundwater investigation plan(s)) approved by the TCEQ. This extended investigation may be coordinated with investigation of the ERB or the EQB.

m.   NAB and SAB – APAR. Upon completion of the investigations as specified in Paragraphs 2.j., 2.k. and 2.l., DuPont shall submit an APAR, using Form TCEQ-10325 or current applicable form, documenting the investigation results to the TCEQ for review and approval, in consultation with EPA. The APAR shall be submitted within the time frame established in the approved schedule included in the NAB and SAB investigation plan(s). The APAR shall address the full nature and extent of the contamination, and shall include the risk assessment results, QA/QC procedures followed, Data Quality Objectives met, and a description of recommended response actions, including interim actions.

n.   NAB and SAB – Response Action. If a RAP is required by TRRP rules for the NAB and/or the SAB, then within one-hundred twenty (120) days after receipt of approval of the APAR referenced above, DuPont shall submit a RAP to TCEQ for review and approval, in consultation with EPA. The RAP shall include necessary response actions to remove, decontaminate, and/or control any COCs at concentrations above the critical PCLs based on commercial/industrial land use or ecological or human receptors, as appropriate and in accordance with 30 Tex. Admin. Code § 350.78, that are present in the sediments within, or in soils or groundwater below or downgradient of, the NAB or the SAB, or both, pursuant to

the TRRP as codified at 30 Tex. Admin. Code Chapter 350, 30 Tex. Admin. Code § 335.167 and 40 C.F.R. Part 264, Subpart F. The RAP may also include a proposal for application to TCEQ for establishing a FOA under the TRRP for the NAB or SAB, or both. If the RAP includes an application for a FOA authorization, it shall comply with the application requirements of 30 Tex. Admin. Code § 350.135 and include a completed Qualifying Criteria Checklist in accordance with TCEQ Publication RG-366/TRRP-34, or current applicable form. The RAP, if it includes action related to the sediments, shall be consistent with the following:

i. For COCs detected in the sediments at concentrations at or above those set forth in 40 C.F.R. § 261.24, DuPont shall propose response actions in the RAP.

ii. For COCs detected in the sediments at concentrations below those set forth in 40 C.F.R. § 261.24 but above the Sediment Assessment Level used in Paragraph 2.k. above, DuPont shall propose response actions in the RAP to address the source sediments if results of a risk-based analysis indicate that a response action is necessary.

Any RAP submitted by DuPont for response and/or corrective actions associated with the NAB and/or SAB may be coordinated with RAPs for response and/or corrective actions associated with the ERB or EQB. DuPont shall implement the RAP as approved or modified by TCEQ and according to the schedule approved by TCEQ, in consultation with EPA. Investigation, response, and/or corrective action activities described in Paragraphs 2.h.-2.n. may be conducted in phases for any unit to allow operational use of portions of the unit, as necessary, during these activities.

o. <u>Clean Water Ditch</u>. DuPont has represented to EPA that it has made upgrades to portions of the Clean Water Ditch by installing HDPE pipe along with concrete collection boxes, and a concrete mixing sump for conveyance and holding water in the Clean Water Ditch. By no later than two hundred and forty (240) days after the Effective Date, DuPont shall complete the extensions of upgrades to the entire Clean Water Ditch to Outfall 201. Within sixty (60) days of completion of upgrades, DuPont shall submit a certification of completion of the upgrades to EPA and TCEQ.

p. If DuPont, or the TCEQ, in consultation with EPA, determines that modifications to Permit No. 50213 are required in response to investigation results described above, then DuPont shall, within ninety (90) days after such determination, submit a modification or amendment application requesting authorization of any proposed changes to the TCEQ in accordance with 30 Tex. Admin. Code, Chapter 305, Subchapter D, and Sections II.A.1 and XI.J.4 of IHW Permit No. 50213. Changes to Permit No. 50213 may include, without limitation, adding units and/or

updating the status of existing units subject to corrective action, and adding COCs and their respective PCLs to the groundwater monitoring program.

q.   <u>Financial Assurance</u>. DuPont shall provide financial assurance for response (and/or closure and post-closure, if applicable) and corrective actions required by this Consent Decree at the Facility in accordance with the TRRP Rules and TCEQ financial assurance rules at 30 Tex. Admin. Code Chapter 37, the provisions of the Corrective Action Permit, and 40 C.F.R. Part 264, Subpart H.